IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Towne,                          :
              Appellant               :
                      :
   v.                                   :   No. 381 C.D. 2023
                      :
Allegheny County                        :   Argued: February 6, 2024

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                             FILED:  July 3, 2024

Appellant William Towne (Towne) appeals from the Court of Common Pleas of Allegheny County's (Trial Court) April 17, 2023 order. Through that order, the Trial Court denied Towne's Petition for Review and Motion to Enforce; denied in part and granted in part his Motion to Consider Additional Admission; and denied Towne's request to award him attorney fees, and impose monetary penalties against Appellee Allegheny County (County), on account of the County's handling of Towne's Right-to-Know Law (RTKL) records request.[1] After review, we affirm the April 17, 2023 order in part, reverse it in part, and vacate it in part. In addition, we remand this matter in part to the Trial Court for further proceedings.

## I. Background

The genesis of this matter occurred on June 8, 2021, when Towne submitted a request to the County seeking certified copies of the following:

> 1.   All reference instructions, training materials, procedures, manuals, and other records documenting

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

procedures used (or to be used) for remaking and mixing of cast mailed-in ballots, which were prepared, modified, or used in 2020 or 2021. This request includes documents in both categories: used for, and revised following, elections held in 2020.

2. Ballot image scans and cast vote records for precincts from LIBERTY DIST I through MCKEES ROCKS WARD DIST I in the County's alphabetically sorted set of precincts.

3. All lists or records showing the correspondence between the voter receiving a ballot and the small [two-dimensional][2] code + number printed on mail-in and absentee ballots near the bottom of ballots for the November 2020 election and near the top of ballots for the May 2021 primary election (-I- nonpartisan ballot questions). This request includes responsive records held by Midwest Direct and/or RBM Consulting or any other relevant party.[3]

4. All records discussing the codes referred to in the previous numbered item and/or intended purposes of those codes.

---

[2] This is an apparent reference to a two-dimensional barcode, which "resembles a crossword puzzle and serves as a small portable data file, which enables the barcode to store a large amount of data." Manoj Govindaiah, *Driver Licensing Under the Real ID Act: Can Current Technology Balance Security and Privacy?*, 2006 U. ILL. J. L. TECH. & POL'Y 201, 206 (2006).

[3] RBM Consulting, LLC, is a third-party contractor tasked by the County with the production of its election ballots. *See* Reproduced Record (R.R.) at 401. Midwest Direct is a subcontractor tasked by RBM Consulting with the distribution of its products. *See id.* at 23a.

R.R. at 53a. After invoking a 30-day extension to respond pursuant to Section 902 of the RTKL,[4] the County did not respond to the request, resulting in a deemed denial. *Id.* at 50a.

Towne responded by appealing this deemed denial to the Pennsylvania Office of Open Records (OOR). In a July 19, 2021 letter, the OOR advised the County to preserve all potentially responsive records during the appeal process. *Id.* at 102a-04a. In addition, the OOR informed the County that statements of fact "<u>must</u> be supported by an affidavit or attestation made under penalty of perjury by a person with actual knowledge." *Id.* at 104a (emphasis in original). The OOR further advised the County that, if the records are held by "a contractor or vendor," the County "**must notify such parties of this appeal immediately**," as a third party's failure to participate "**may be construed as a waiver of objections regarding release of requested records**." *Id.* at 103a (emphasis in original).

In a written reply to OOR dated July 27, 2021, County Open Records Officer Allan Opsitnick (Optsitnick) stated that the records identified in Items 1 and 4 of the request did not exist. *Id.* at 109a-10a. Opsitnick further explained that the records identified in Item 2 were "ballot image scans for certain municipalities in [the] County which were unintentionally omitted from a prior countywide submission to [] Towne by flash drive," and that said records were being sent to Towne. *Id.* at 109a. As for Item 3, Opsitnick explained that the data requested could be used to match completed ballots with the identity of the voters who completed them. *Id.* As a result, the County's position was that releasing the records sought through Item 3 would

---

[4] Under certain circumstances, Section 902 permits an agency to extend its five-day response time to a right-to-know request by 30 days, with written notice to the requester. 65 P.S. § 67.902. In this instance, the County cited staffing limitations as the reason for the delay, as permitted by Section 902(a)(3) of the RTKL, 65 P.S. § 67.902(a)(3). R.R. at 50a.

violate the Pennsylvania Constitution's voting secrecy protections.[5] *Id.* The County also submitted a notarized affidavit from David Voye (Voye), Manager of the County's Elections Division, which largely repeated Opsitnick's assertions. *Id.* at 111a.

The OOR responded via email on August 5, 2021, asking the County to submit an additional affidavit from Voye "detailing a search for records responsive to Items 1 and 4 and/or the basis of his knowledge that no such records exist." *Id.* at 137a. The OOR also asked that the affidavit specify whether third-party contractors were contacted in search of responsive records, and explain how the data requested through Item 3 could be used to identify voters. *Id.* Voye then provided the OOR with a supplemental affidavit, dated August 9, 2021, in which he addressed Item 1, 3, and 4 of Towne's request. With regard to Item 1, Voye stated:

> There are no materials regarding the "remaking and mixing of cast mailed-in ballots, which were prepared, modified, or used in 2020 or 2021." I reviewed this request with Chet Harhut, Deputy Manager [of the County's Elections Division (Harhut),] as well. As to remarking ballots using the Express Vote machines, there were only verbal instructions. There is no writing regarding remarking, though the initial request mentioned "remaking" of ballots. Additionally, there was no remixing of ballots as the ballots were premixed, being out of their declaration envelopes and not associated with a particular voter.

---

[5] *See* PA. CONST. art. VII, § 4 (providing that all "elections by the citizens shall be by ballot or by such other method as may be prescribed by law: Provided that secrecy in voting be preserved").

*Id.* at 144a.[6] As for Item 3, Voye explained that he had conducted a search of his own e-mail messages, and learned that the County was never provided with a record of the correspondence between voter names and their ballots' barcode numbers. *Id.* Thus, Voye concluded that the County did not possess records responsive to that portion of Towne's request. *Id.* at 144a. Voye also maintained that even if the County had theoretically possessed such records, they could not be provided to Towne because they could be used to match individual voters with their completed ballots.[7] *Id.* Lastly, Voye asserted that the records sought through Item 4 (*i.e.*, "discussions" of the records identified in Item 3) did not exist. *Id.* Voye recalled a telephone

---

[6] In later testimony, Voye explained that "remaking" was an apparent reference to the practice of *re-marking* completed ballots, which occurs when a ballot-reading machine cannot read the marks made on a ballot left by the elector, and a staff member will darken the mark or otherwise cure the optic defect. R.R. at 512a.

[7] Mr. Voye's full explanation of why the records could not be released is as follows:

> As it is possible to match the codes from the mail-in/absentee ballot envelope and the ballot itself, it is possible to identify a voted ballot with a particular voter. As a result, this request cannot be honored as it is in violation of the Pennsylvania Constitution Article VII Paragraph 4, that mandates secrecy in voting. More specifically, the County's ballot printing/mailing vendor marked the outer mailing envelope, the declaration envelope[,] and the ballot with a 2D bar code with a sequential number following. I have searched my email and to the best of my knowledge we were not furnished with voters['] names and their associated bar code number. If we had this information, it should not be made public record because the requestor already has scans of all the ballots cast with the bar codes on them. One could very easily "marry" a voted ballot with a bar code to an individual voter, thus bypassing the secret ballot Constitutional mandate.

R.R. at 144a.

5

conversation with Todd Mullen, an RBM Consulting employee, but did not explain that conversation's significance.[8]

The OOR subsequently issued a "Final Determination"[9] on August 18, 2021, through which it granted Towne's appeal in part, denied it in part, and dismissed it as moot in part. *Id.* at 147a-58a. Therein, the OOR determined that the County had successfully established that it did not possess any of the records sought through Item 1. *Id.* at 151a. Additionally, the OOR acknowledged that the County had responded to Item 2 by providing Towne with ballot image scans and cast votes, but nevertheless directed the County to give Towne certified copies of those materials. *Id.* at 150a. As for Item 3, the OOR agreed with the County that the Pennsylvania Constitution's ballot secrecy requirements prevented the release of responsive records. *Id.* at 153a-57a. Finally, the OOR observed that Item 4 "seeks records discussing the [two-dimensional] codes [that were printed on the County's mail-in ballots] and their intended purpose, as opposed to records correlating those codes to specific voters. *Id.* at 157a-58a. Accordingly, the OOR directed the County to obtain from its third-party contractors any records that were responsive to Item 4, and to provide certified, appropriately redacted copies to Towne. *Id.* at 158a. The OOR further ordered the County to submit a sworn affidavit, in the event it concluded that no such responsive records existed. *Id.*

---

[8] Voye's explanation of the County's response to Item 4 of the request is as follows: "No such records exist. After an additional review, no such records exist. I can recall a telephone conversation with Todd Mullen of RBM Consulting discussing the matching of [two-dimensional] bar codes[.]" R.R. at 144a. (The original does not contain punctuation at the end of the paragraph.)

[9] Although the ruling bore the heading of Final Determination, the ruling was not, in fact "final," as OOR would subsequently issue a Final Determination Upon Reconsideration (discussed below).

On August 23, 2021, Towne petitioned the OOR for reconsideration of the Final Determination. *Id.* at 161a. Towne alleged, *inter alia*, that the County's written statements were insufficient as evidence, because they were not made under penalty of perjury. *Id.* at 162a. In its August 26, 2021 response, the OOR granted Towne's petition, on the basis that Voye's affidavits should not have been accepted as evidence. *Id.* at 170a. However, the OOR also advised Towne that it would allow the County to cure the defects with the submission of an affidavit that was "sworn or made under penalty of perjury." *Id.* The OOR further stated that it would not permit the parties to submit new evidence before its reconsideration. *Id.* at 170a-71a. In response, the County submitted a written "verification," in which Opsitnick largely repeated the averments Voye had made in his supplemental affidavit.[10] *Id.* at 179a.

Towne then filed objections to this ruling. In doing so, he argued that the OOR had effectively given the County an opportunity to offer new evidence, despite the fact that the parties had been precluded from doing so. *Id.* at 185a. Furthermore, Towne alleged that Opsitnick's "verification" was still legally inadequate, because the OOR requires individuals to provide sworn statements made under penalty of perjury, rather than unsworn statements made under the lesser penalties for falsifications that are not made under oath.[11] *Id.* at 186a. Towne further alleged that

---

[10] Opsitnick also explained that he was submitting the verification in place of Voye, who was apparently out of the office at the time. R.R. at 178a.

[11] Section 4902(a) of the Crimes Code provides that "[a] person is guilty of perjury, a felony of the third degree, if in any official proceeding he makes a false statement under oath or equivalent affirmation, or swears or affirms the truth of a statement previously made, when the statement is

**(Footnote continued on next page…)**

7

the County had engaged in bad faith, given that it could have easily completed its "paltry" responsive efforts within five days of receiving the request. *Id.* at 188a. Finally, Towne observed that Opsitnick's verification failed to establish whether the County had yet contacted third parties in search of responsive records, as required by the Final Determination. *Id.* at 188a-89a.

On September 27, 2021, the OOR issued its "Final Determination Upon Reconsideration." Therein, OOR reminded the County to provide certified copies of ballot image scans and cast vote records in response to Item 2, and to contact third parties in search of records responsive to Item 4, but concluded that the County had

---

material and he does not believe it to be true." 18 Pa. C.S. § 4902. By contrast, Section 4904 of the Crimes Code states, in relevant part:

> (a) In general.--A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:
>
>> (1) makes any written false statement which he does not believe to be true;
>>
>> (2) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity; or
>>
>> (3) submits or invites reliance on any sample, specimen, map, boundary mark, or other object which he knows to be false.
>
> (b) Statements "under penalty".--A person commits a misdemeanor of the third degree if he makes a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.
>
> (c) Perjury provisions applicable.--Section 4902(c) through (f) of this title (relating to perjury)[, 18 Pa. C.S. § 4902(c)-(f),] applies to this section.

*Id.* at § 4904.

met its burden in all other respects. *Id.* at 80a-81a.[12] Additionally, OOR also found that the record did not show that the County had acted in bad faith when responding to Towne's request. *Id.* at 73a.

Towne responded by filing an appeal with the Trial Court on October 27, 2021, through which he asked the lower tribunal to direct the County to provide him with "certified copies of all requested records"; to find that the County had acted in bad faith; and to award him monetary penalties, costs, and counsel fees. *Id.* at 4a, 40a.[13] The County responded by claiming that Towne's appeal was "without merit," because it had "fully complied" with OOR's Final Determination Upon Reconsideration. *Id.* at 212a-13a.[14]

The Trial Court held oral argument on September 27, 2022. *Id.* at 478a. Following argument, the Trial Court directed the County to produce a one-page sample of the records requested through Item 3, with voters' names redacted, for *in camera* review. *Id.* at 355a. On September 30, 2022, the County notified Towne's counsel that Midwest Direct, the third-party contractor which once possessed such

---

[12] The OOR disagreed with Towne's assertion that Opsitnick's written verification was legally insufficient, since "OOR permits either sworn affidavits *or* verifications/attestations, which are un-notarized statements made subject to the penalties of 18 Pa.C.S. § 4904, to serve as evidence in an appeal." *Id.* at 74a.

[13] The Trial Court was the ultimate finder of fact in this matter, as ordained by the RTKL, and consequently conducted a *de novo*, plenary review of the OOR's Final Determination Upon Reconsideration. *See Bowling v. Off. of Open Recs.*, 75 A.3d 453, 474 (Pa. 2013).

[14] The County took issue with the timing of Towne's appeal, stating that he had filed it before he had received the County's response to the OOR's Final Determination Upon Reconsideration, through which it had provided Towne with additional records. R.R. at 212a. In support of this assertion, the County provided another affidavit from Voye, which was dated October 26, 2021, as well as copies of e-mails between County representatives and David Sandretto, chief executive officer for Byers Printing, which was the contractor the County had used for the May 2021 primary. *See id.* at 216a-30a.

records, had informed Opsitnick that those records no longer existed. *Id.* at 354a. Towne responded by filing a motion, through which he asked the Trial Court to treat those e-mails as an admission that the County "still has not fully complied with its basic obligations and must instead be ordered to do so" by the Trial Court.[15] *See id.* at 348a.

On November 7, 2022, the Trial Court issued an order that (a) directed the County, and its third-party contractors, to search again for materials that were responsive to Items 1, 3, and 4; (b) instructed the County to file an affidavit describing the search conducted; and (c) to provide an additional affidavit, if necessary, that explained why any responsive records had been destroyed. *Id.* The Trial Court gave the County 40 days to comply with the order. *Id.* at 366a. In response to a motion by the County, the Trial Court extended the compliance deadline by 20 days, to January 6, 2023. *Id.* at 398a.

The County complied on January 6, 2023, by submitting affidavits from Mullen (of RBM Consulting) and Harhut (the County Elections Division's Deputy Manager); new affidavits from Opsitnick and Voye; and a letter that Midwest Direct's counsel had sent to Opsitnick. *See id.* at 400a. In his affidavit, Mullen stated that his firm did not possess any of the records identified in Item 3 of the request, a conclusion he reached "[a]fter an extensive document search." *Id.* at 401a-02a. As for Harhut, he stated that the contractors tasked by the County with ballot printing and mailing "have no contact with voted mail[-]in and absentee ballots." *Id.* at 405a-06a. Voye attested that the County's approach to the re-marking of ballots has been

---

[15] In the motion to admit the communications as evidence, Towne alleged that Opsitnick's language reveals a failure to direct the County's third-party contractors to search for responsive documents until after oral argument, thus indicating continued bad faith on the County's part. R.R. at 347a-48a.

"developed over time without any formal documentation"; thus, the County did not possess any records that were responsive to Item 1. *Id.* at 403a-04a. With regard to Opsitnick, his affidavit detailed a search of e-mail messages between key County personnel and representatives of RBM Consulting and Midwest Direct,[16] which had failed to yield records that were responsive to Items 3 or 4. *Id.* at 410a-11a.[17] As for the letter, Midwest Direct's counsel explained therein that his client did not possess any records responsive to either of those Items. *Id.* at 408a-09a. Referring specifically to Item 3, Midwest Direct's counsel explained that the company "[previously had] a list of the series of numbers that, with additional steps, could possibly tie a voter name" to the numbers printed on their mail-in ballots. *Id.* at 408a. That list, however, was "no longer in existence." *Id.* Counsel also noted that the County should already possess any e-mail messages between Midwest Direct and County personnel that were responsive to Item 4. *Id.*

Towne then filed a Motion to Enforce on January 20, 2023, alleging therein that the County's January 6, 2023 response to the Trial Court's order was significantly defective. *See id.* at 416a-60a. Of particular note, Towne asserted that the County had failed to produce affidavits from all of the relevant contractors, including Byers Printing, the County's contractor for the 2021 elections. *Id.* at 420a-

---

[16] Opsitnick explained that he had asked a County information technology employee to search its e-mail server for messages sent between September 1, 2020, and June 30, 2021, containing the search terms "mail ballots," "2D code," and "barcode," to or from the following people: Voye, Harhut, and two other County employees (Jerry Tyskiewicz and Jessica Garofolo); Mullen and three other RBM Consulting employees (Virginia Mullen, Daniel McGinnis, and Keith McGinnis); and anyone with a Midwest Direct e-mail address. R.R. at 410a-11a.

[17] Each of these four affidavits was made pursuant to Section 4904 of the Crimes Code, 18 Pa. C.S. § 4904. *See* R.R. at 401a-06a; 410a-11a; *cf.* fn. 11 *supra* (providing relevant statutory text of Section 4904).

11

21a. Towne further alleged that Mullen's affidavit was ineffective and "conclusory," in that it did not describe in detail "the types of records [searched], steps of the search, terms used for a computer search, the dates of the search, and the names and job titles of those [who] searched[,]" and made similar assertions about Voye's and Mr. Opsitnick's affidavits. *Id.* at 420a-22a.

The Trial Court subsequently issued an order on April 17, 2023, through which it (1) affirmed the OOR's Final Determination Upon Reconsideration;[18] (2) denied Towne's motion to enter into the record e-mail correspondence between Opsitnick and the Trial Court's law clerk; and (3) denied Towne's Motion to Enforce, as well as his request for penalties and attorney fees. *Id.* at 477a. In its accompanying opinion, the Trial Court stated that the County's responses "substantially compl[ied]" with the terms of the Trial Court's November 7, 2022 order, "and prove by a preponderance of the evidence that neither it nor its contractors possess any responsive records beyond those already provided to [Towne]." *Id.* at 473a-74a. While acknowledging that neither Mullen's affidavit nor the letter from Midwest Direct's counsel satisfied the terms of the November 7, 2022 order, the Trial Court reasoned that the County "has no way of forcing [its] contractors to be more specific." *Id.* Ultimately, the Trial Court concluded that the County did not possess any responsive records for which a good-faith search had not already been performed. *Id.*

This appeal to our Court followed shortly thereafter.

---

[18] The Trial Court noted that the County was still bound by the terms of the November 7, 2022 order, which tasked the County with conducting additional searches for records responsive to Items 1, 3, and 4, and obtaining any such records from third parties. R.R. at 477a.

## II. Discussion

Towne presents a litany of arguments for our consideration,[19] which we reorder and summarize as follows. First, the Trial Court erred by finding that the County established that no additional records existed that were responsive to Items 1, 3, and 4. Towne's Br. at 15-24, 34. In doing so, the Trial Court improperly disregarded the County's failure to adequately describe the particulars of its searches, as well as those done by its third-party contractors.[20] *Id.* Second, the Trial Court erred by concluding that the materials sought through Item 3 were not public records that could be obtained through an RTKL request. *Id.* at 34-40. Third, the Trial Court did not properly enforce the terms of its November 7, 2022 order against the County. *Id.* at 25-29. Specifically, the Trial Court erred by concluding "that the County could not force their contractors to be more specific or force its contractors to conduct more thorough searches[,]" as well as by ignoring the County's failure to submit affidavits that satisfied the terms of that order. *Id.* Fourth, the Trial Court erred by determining that the County had not acted in bad faith while handling Towne's records request, as well as by failing to award Towne attorney's fees and monetary penalties on account of the County's conduct. *Id.* at 40-53. Finally, the

---

[19] When a case under the RTKL reaches this Court from a court of the common pleas, our standard of review is limited to determining whether findings of fact are supported by substantial evidence, or whether the lower court committed an error of law or abuse of discretion in reaching its decision. *Kaplin v. Lower Merion Twp.*, 19 A.3d 1209, 1213 n.6 (Pa. Cmwlth. 2011). The scope of our review is plenary. *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc.*, 13 A.3d 1025, 1029 n.3 (Pa. Cmwlth. 2011).

[20] Towne states in his brief that the County failed to meet its burden "[f]or each [i]tem of the [r]equest at issue in this appeal." Towne's Br. at 13. However, Towne fails to present any arguments that specifically pertain to Item 2, so we need not further discuss the disposition of that portion of Towne's request.

13

Trial Court erred by "implicitly affirming" the OOR's rulings regarding various procedural matters and the legal sufficiency of the County's affidavits. *Id.* at 29-34.

## A. Sufficiency of the County's Evidence

Through his first argument, Towne maintains that the County failed to meet its burden of proving that there are no additional records that are responsive to Items 1, 3, and 4 of his request. Under the RTKL, an agency in receipt of a request for records must make a good faith effort to determine whether it has possession, custody, or control of the identified records. *Smith Butz LLC v. Pa. Dep't of Env't Prot.*, 142 A.3d 941, 945 (Pa. Cmwlth. 2016). The burden of proving a record does not exist, or is exempt from disclosure, is placed on the agency responding to the request. *Hodges v. Pa. Dep't of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011). Relevant and credible testimonial affidavits may provide sufficient evidence in support of a claimed exemption. *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1130 (Pa. Cmwlth. 2017) (citing Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1)). The affidavits "must be detailed, nonconclusory, and submitted in good faith." *Pa Dep't of Health v. Mahon*, 283 A.3d 929, 935 (Pa. Cmwlth. 2022). By contrast, when an agency asserts that a requested record does not exist, "it may satisfy its burden of proof with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Hodges*, 29 A.3d at 1192 (cleaned up). "In the absence of any competent evidence that the agency acted in bad faith or that records exist," the affidavit's averments should be accepted as true. *Smith Butz*, 142 A.3d at 945.

## 1. Item 1 of the Request

First, Towne argues that the County failed to establish that no additional records exist that are responsive to Item 1, through which he sought "[a]ll reference

14

instructions, training materials, procedures, manuals, and other records documenting procedures used (or to be used) for [remarking] and mixing of cast mailed-in ballots, which were prepared, modified, or used in 2020 or 2021." R.R. at 53a. Towne maintains that the County's response was inadequate, because the County's affidavits fail to detail "what was searched, when, [or] by whom." Towne's Br. at 18. To meet the RTKL's standards, Towne argues, the County should have "prepared an affidavit that identified where it stores/maintains it[s] policies and procedures, how it determined those were the only places where records are stored, those databases or relevant files were searched (including who searched and when), and whether that search of those files located any responsive records." Towne's Br. at 19.

Towne's argument is unavailing. When an agency avers in an unsworn statement that it does not possess a requested record, neither the RTKL nor our case law requires that the statement also catalogue the agency's policies, procedures, record storage practices, or other information not directly pertinent to the specific request at hand. Rather, the agency's open records officer may satisfy the agency's burden of proof by making "a good faith and thorough inquiry to determine if the [agency is] in possession of" the requested records. *Hodges,* 29 A.3d at 1192. Here, Voye stated in his August 9, 2021 supplemental affidavit that the County did not possess responsive records, as all instructions on the remarking of ballots were oral rather than written, and that the County did not mix ballots. R.R. at 144a. Towne offers no competent evidence that the alleged deficiencies of this supplemental affidavit are proof that the County acted in bad faith or that the records requested through Item 1 indeed exist. Accordingly, the County has met its burden of proving

15

that records responsive to Item 1 of the request are not within its possession, custody, or control.

## 2. Item 3 of the Request

Next, Towne argues that the County failed to meet its burden as to Item 3, through which he requested "[a]ll lists or records showing the correspondence between the voter receiving a ballot and the small [two-dimensional] code [and] number printed on mail-in and absentee ballots" for the November 2020 general election or the May 2021 primary.  R.R. at 53a. Towne maintains that RBM Consulting's affidavit is "vague" and "conclusory," lacking the specificity required by the RTKL. Towne's Br. at 21. As for Midwest Direct's letter, Towne argues that the Trial Court should never have accepted the "unsworn" averments contained therein. *Id.* Finally, Towne observes that the County's response to Item 3 of the request appears to have completely overlooked Byers Printing, the contractor the County had used for the May 2021 primary. *Id.* at 22.

We conclude that the County has fulfilled some, but not all, of its duties in responding to Item 3 of the request. First, specifically regarding responsive records within its *direct* possession or control, the County has met its burden of proving that none exist. Voye's August 9, 2021 supplemental affidavit described a search of his own e-mail archive, and stated his conclusion that the County was never provided with records establishing the correspondence between voter names and the barcodes printed on their blank ballots. R.R. at 144a. Without competent evidence of bad faith or that responsive records indeed exist, we must accept this assertion as true.

Regarding records in the possession or control of the County's contractors, however, the County has only partially met its burden. Mullen's unsworn affidavit, which he made under penalty of perjury, states that RBM Consulting had concluded

16

that it did not possess responsive records following an "extensive document search." *Id.* at 401a-02a. This affidavit is legally adequate and is sufficient to satisfy the County's burden under the RTKL to show that RBM Consulting possesses no such records. *See Mahon*, 283 A.3d at 936. By contrast, the letter from Midwest Direct to Opsitnick fails to meet the RTKL's evidentiary standards, as it was neither given under penalty of perjury nor issued by someone with personal knowledge of the facts in the matter. *Hodges*, 29 A.3d at 1192. Thus, the Trial Court should not have accorded the letter any probative value. Furthermore, the County has not shown what steps it has taken to obtain and review any records from Byers Printing, even though Towne clearly stated that he was seeking records from both the November 2020 general election and the May 2021 primary. Accordingly, the County must continue searching for records responsive to Item 3, specifically those which may be held by Byers Printing and Midwest Direct. Any evidence that the County intends to produce of the nonexistence of such records must meet the RTKL's evidentiary standards.

### 3. Item 4 of the Request

Lastly, Towne argues that the County failed to satisfy its burden as to Item 4, through which he sought "[a]ll records discussing the codes referred to in [Item 3] and/or intended purposes of those codes." R.R. at 53a. Towne maintains that the County's response remains inadequate for several reasons. First, Voye's October 26, 2021 affidavit fails to explain "what was searched, why those searched records were sufficient to locate all responsive records, how the search was conducted, or even that the search was complete." Towne's Br. at 22. Second, Towne alleges that the search omitted e-mail messages from key County personnel. *Id.* at 23. Third, the few records released do not include any records related to the November 2020 general election. *Id.* at 23-24. In addition, Towne argues that Mullen's affidavit and the letter

17

written by Midwest Direct's counsel fail to adequately detail the searches either of their organizations performed. *Id.* at 24.

We agree with Towne that the County has failed to meet its burden as to Item 4. After initially denying that responsive records existed, Voye stated in his October 26, 2021 affidavit that several records responsive to Item 4 were attached to the affidavit. *Id.* at 215a. Included therein were e-mail discussions between County officials and Matthew Sandretto, Byers Printing's chief executive officer, discussing the mailings to be sent to voters for the May 2021 primary. *Id.* at 216a-30a. Also attached was a document titled "Data Plan," which consisted primarily of a mock-up of the ballots to be sent to voters. *Id.* at 231a-36a. These e-mails and the Data Plan each contain brief discussions of the two-dimensional codes printed on the mailing envelopes and the purpose of those codes.[21] However, it is impossible to discern any relevant facts from Voye's October 26, 2021 affidavit other than that the County had provided Towne with some records that were responsive to Item 4. This affidavit is also devoid of any information about how the search was performed, who performed it, or how Voye seemingly determined that no other records needed to be released. Furthermore, this affidavit fails to show whether this search covered records relating to the November 2020 general election, or whether the County had disclosed all of the pertinent e-mails within its possession.

Additionally, the County's efforts to obtain records from its contractors regarding Item 4 are incomplete. As with Item 3, Mullen's affidavit satisfies the County's burden of proof regarding RBM Consulting's assertion that it possesses no responsive records for Item 4. *Mahon*, 283 A.3d at 935. The same cannot be said for

---

[21] *See*, *e.g.*, page 3 of the Data Plan, where a text box next to a two-dimensional barcode explains that the barcode contains an identification number and information indicating the voter's precinct and party, with the purpose of guaranteeing a match to the right ballot. R.R. at 233a.

Midwest Direct. Although Midwest Direct was involved in the printing and distribution of ballots, the County has not presented valid evidence that Midwest Direct conducted a legally adequate search for records pertaining to Item 4. Rather, the letter from Midwest Direct's counsel to Opsitnick stated that Midwest Direct staff "exchanged e[-]mails with [the County] on or about December 28, 2021[,] and September 28, 2022, in which the codes were discussed in relation to the . . . request itself." R.R. at 441a. This letter, which was authored by someone who had not personally conducted the records search for and was not written under penalty of perjury, falls short of the proof of nonexistence required by the RTKL.[22] *Hodges*, 29 A.3d at 1192.

For the foregoing reasons, we conclude that the Trial Court erred as to Item 4, and direct the County to issue a satisfactory response to that part of the request. Such a response must include an explanation of the search that yielded the records released with the October 26, 2021 affidavit and, if applicable, any remaining responsive records in the County's possession. The County must also submit proper evidence that Midwest Direct has performed an adequate search for responsive records in its possession.[23]

## B. Bad Faith

Next, we address Towne's argument that the Trial Court erred by declining to find that the County had handled his RTKL request in bad faith. In the context of the

---

[22] Insofar as the averments contained in the letter have any value to the Court, it should be noted that only one of the e-mail discussions alluded to by Midwest Direct's counsel (the one from December 28, 2021) appears in the record. *See* R.R. at 291a. Thus, even the document improperly relied upon by the County suggests that other responsive records have still not been obtained, reviewed, and released.

[23] Given our disposition of Towne's first argument, we need not address the merits of his second or third arguments.

RTKL, "bad faith" does not require a showing of fraud or corruption. *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr*., 185 A.3d 1161, 1170 (Pa. Cmwlth. 2018). Rather, a requester need only show that the agency has exhibited a "lack of good faith compliance with the RTKL and an abnegation of mandatory duties under its provisions." *Id*.; *accord Bagwell*, 155 A.3d at 1141. The RTKL specifically allows for two different types of monetary sanctions to be imposed as a consequence of an agency's failure to act in good faith. First, a Court may award a requester attorney's fees and costs in the event it concludes that "the . . . agency acted with a willful or wanton disregard, that the . . . agency's actions were not based on a reasonable interpretation of law, or that the . . . agency's appeal was frivolous." *Bagwell*, 155 A.3d at 1140 (citing Section 1304 of the RTKL, 65 P.S. § 67.1304). Second, under Section 1305(a) of the RTKL, a "court may impose a civil penalty of not more than $1,500 if an agency denied access to a public record in bad faith." 65 P.S. § 67.1305(a).

We conclude that the Trial Court's disposition of Towne's bad faith claim was manifestly deficient. It is well settled that, when acting as the factfinder in an RTKL dispute, a court must address any allegations of bad faith by issuing sufficiently detailed and thorough factual findings and legal conclusions. *See Bagwell*, 155 A.3d at 1140; *Bowling*, 621 A.3d at 476. Despite this, the Trial Court devoted all of one sentence in a footnote to disposing of Towne's assertion that the County had handled his request in bad faith, stating: "Although the County did not provide all responsive records in a timely manner, I cannot find bad faith on this record." Trial Ct. Op., 4/17/2023, at 2 n.1. Such cursory and conclusory consideration of Towne's bad faith claim falls far short of satisfying the RTKL's requirements.

### C. The OOR's Rulings

Finally, Towne asserts that the Trial Court erred by "implicitly affirming" a variety of procedural rulings made by the OOR, ones which had caused unnecessary delays and were prejudicial to him, as well as the OOR's decision to allow the County to submit affidavits that were not subject to penalties for perjury. Towne's Br. at 29-34. This argument is misplaced. Per the RTKL, the Trial Court was the ultimate finder of fact and conducted a *de novo*, plenary review. *See Bowling*, 75 at 474. Therefore, the propriety of the OOR's rulings is immaterial, as the slate was effectively wiped clean once Towne appealed the OOR's disposition of his request to the Trial Court.

### III. Conclusion

In accordance with the foregoing analysis, we affirm the Trial Court's April 17, 2023 order in full with regard to Item 1; affirm the order in part and reverse it in part as to Item 3; reverse the order in full regarding Item 4; and vacate the order in full as to the Trial Court's disposition of Towne's bad faith claim. Furthermore, we remand this matter in part, with regard to Items 3 and 4, and the issue of bad faith. On remand, the County shall have 30 days to provide Towne and the Trial Court with an amended response to Items 3 and 4. In addition, the Trial Court is directed to make factual findings and legal conclusions as to the County's compliance with this opinion's directives regarding Items 3 and 4 (including with regard to any disclosure exemptions invoked by the County), and shall properly dispose of Towne's bad faith claim, within 30 days of the date upon which the County files its amended response.

---

ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Towne,                :
         Appellant       :
                      :
      v.                    : No. 381 C.D. 2023
                      :
Allegheny County       :

## **O R D E R**

AND NOW, this 3rd day of July, 2024, it is hereby ORDERED that the Court of Common Pleas of Allegheny County's (Trial Court) April 17, 2023 order is:

1. AFFIRMED IN FULL as to the disposition of Item 1 of William Towne's (Towne) Right-to-Know Law (RTKL) records request;

2. AFFIRMED IN PART AND REVERSED IN PART as to the disposition of Item 3 of Towne's RTKL request;

3. REVERSED IN FULL as to the disposition of Item 4 of Towne's RTKL Request; and

4. VACATED as to the disposition of Towne's claim that Appellee Allegheny County (County) handled his RTKL request in bad faith.

It is FURTHER ORDERED that this matter is REMANDED IN PART to the Trial Court. On remand, the County shall have 30 days to provide Towne and the Trial Court with an amended response to Items 3 and 4. In addition, the Trial Court shall issue factual findings and legal conclusions as to the County's compliance with this opinion's directives regarding Items 3 and 4 (including with regard to any disclosure exemptions invoked by the County), and shall properly dispose of Towne's bad faith claim, within 30 days of the date upon which the County files its amended response.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge