# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Dunbar, : 
        Petitioner :
  :
      v. : No. 670 C.D. 2023
  : Submitted: June 6, 2024
Office of Attorney General, :
        Respondent :

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE STACY WALLACE, Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE DUMAS**                       **FILED: September 11, 2024**

Gregory Dunbar (Petitioner), *pro se*, has petitioned this Court to review the final determination issued on May 17, 2023, and a supplemental determination issued on May 26, 2023, by the Pennsylvania Office of Attorney General (OAG), which denied Petitioner's appeal from a decision by the OAG to deny Petitioner's request for records pursuant to the Right-to-Know Law (RTKL).[1] Upon review, we affirm.

## I. BACKGROUND

Petitioner is an inmate incarcerated at the State Correctional Institution at Benner Township (SCI-Benner). On February 15, 2023, Petitioner submitted a request to the OAG for "a copy of [Administrative Law Judge (ALJ)] 'hearing' dated

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

June 14, 2005 held at SCI Graterford. All evidence documents presented, with transcript. Names (1st/last) of law Judge, and present Law Judge, deputy attorneys." RTKL Req., 2/4/23. The OAG denied the request on the grounds that OAG did not possess any responsive records and explained that any responsive records from 2005 would have been destroyed pursuant to the OAG's established record retention policy. RTKL Resp., 3/27/23, at 2.

Petitioner then appealed, asserting that the OAG had denied his request in bad faith because its record retention policy violated the Criminal History Record Information Act (CHRIA)[2] and because the names of deputy attorney generals are publicly accessible and not destroyed. RTKL Appeal, 4/9/23, at 1-2. In response, the OAG RTKL officer, Sharon Maitland, submitted an answer which relied on her own unsworn affidavit and the unsworn affidavit of Will Stycos, a Senior Deputy Attorney General. Resp. of RTKL Officer on Appeal, 5/2/23.

Ms. Maitland stated that CHRIA regulates the power of the courts but does not apply to the Office of Administrative Law, which is an executive branch tribunal. She further explained that CHRIA does not govern how long a state agency must retain its records. Rather, she noted, pursuant to the OAG's record retention schedule, "administrative files" must be retained at the agency for one year followed by storage for seven years at a secure, remote archival facility, after which they are destroyed. *Id.* at 3-4. Finally, she confirmed that the OAG had undertaken a good faith search for the requested records and that the search had revealed that the requested records had been destroyed in accordance with the OAG's record retention policy. Aff. of Sharon Maitland, 5/2/23, at 2, ¶ 10.

---

[2] 18 Pa.C.S. §§ 9101-9183.

Upon further review, the OAG appeals officer affirmed the denial of Petitioner's request. *See* Final Determination, 5/17/23. The appeals officer stated that CHRIA does not govern the record retention of any records associated with the Petitioner's 2005 ALJ proceeding because an ALJ proceeding is not a criminal proceeding.[3] Therefore, the OAG's record retention policy, which was correctly followed by the OAG, applies to these records. The appeals officer also concluded that because the RTKL office correctly determined that the requested records no longer exist, her decision to deny Petitioner's request was not made in bad faith. *Id.* at 2.

After the OAG appeals officer submitted his final determination, he received a late submission from Petitioner objecting to the failure of the OAG RTKL officer to address his request for the first and last names of present deputy attorneys general in her appeal submission. *See* Pet'r's Submission, 5/15/23. Petitioner also alleged that the decision to deny his request was tainted by a conflict of interest because Petitioner had pending litigation with the OAG, referring to *Dunbar v. Shapiro* (Pa. Cmwlth., No. 480 M.D. 2022). *Id.* Finally, Petitioner sought a sanction of $1,500 against the OAG for acting in bad faith. *Id.* Although the OAG appeals officer had already rendered his decision when he received Petitioner's submission, he provided a response to Petitioner's arguments.[4] In a supplemental determination, he stated that it was unclear what records Petitioner was seeking in his request and

---

[3] CHRIA, generally, concerns collection, maintenance, dissemination, disclosure, and receipt of criminal history records. *See Toland v. Pa. Bd. of Prob. & Parole*, 311 A.3d 649, 669 (Pa. Cmwlth. 2024).

[4] The appeals officer explained his reason for accepting the late submission. He noted that Petitioner's objections were dated May 15, 2023, which was two days before the final determination was issued. He also noted that the submission was not received by the OAG until May 19, 2023. He stated that he chose to address the merits of Petitioner's late submission because Petitioner is an inmate and appeared to be experiencing mailing delays.

noted that both the OAG RTKL officer and the appeals officer had interpreted the part of the request seeking deputy attorneys general names to seek the names of the present ALJ and deputy attorneys general who had been involved in the June 14, 2005 hearing at SCI-Graterford. *See* Suppl. Determination, 5/26/23, at 2.

The appeals officer stated that "[r]ereading the initial request in context with the objections it remains unclear whether [Petitioner] is seeking the names of all Deputy Attorneys General and ALJs presently employed by the OAG, just those involved with his 2005 ALJ hearing, those who are employed in that same section of the OAG, or some other category. The RTKL request lacks sufficient specificity to identify what present ALJ and Deputy Attorney's [sic] General the request is seeking." *Id.* at 2. The appeals officer reasoned that the subject matter and scope of the request are clearly the June 14, 2005 ALJ hearing held at SCI-Graterford, including all evidence and documents presented and the transcript of the hearing. *Id.* Therefore, according to the appeals officer, the names of the presently employed Deputy Attorneys General and ALJ logically must relate back to the scope of this request. *Id.* The OAG appeals officer then invited Petitioner to submit a new request specifying more precisely the names he sought. *Id.* Petitioner declined to do so and instead appealed to this Court.

## II. ISSUES

Petitioner raises three issues for our review, which have been renumbered and restated for clarity.[5] These issues are: (1) whether the OAG erred

---

[5] Petitioner has not developed an argument in support of the issues raised. *See generally* Pet'r's Br. His brief lacks citations to the record or any discernible legal authority. *See id.* While we are generally inclined to construe *pro se* materials liberally, it is not this Court's function to develop a party's arguments. *C.M. v. Pa. State Police*, 269 A.3d 1280, 1285 (Pa. Cmwlth. 2022). We therefore admonish Petitioner that his failure to adequately brief the issues has hindered our review. *See, e.g.*, *City of Phila. v. Workers' Comp. Appeal Bd. (Calderazzo)*, 968 A.2d 841, 846 n.4 (Pa. Cmwlth. 2009) (finding two issues waived for inadequate development).

by not addressing the conflict of interest issue; (2) whether the OAG erred by not addressing Petitioner's request for present first and last names of Deputy Attorneys General; and (3) whether the lower agency record supports Petitioner's allegation that denial of the requested names was done in bad faith. *See* Pet'r's Br. at 5.

### III. DISCUSSION[6]

### A. OAG Properly Denied Petitioner's Request

The RTKL is "remedial legislation designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions . . . ." *Bowling v. Off. of Open Recs.,* 990 A.2d 813, 824 (Pa. Cmwlth. 2010), *aff'd*, 75 A.3d 453 (Pa. 2013). We must liberally construe its provisions to effectuate this purpose. *Levy v. Senate of Pa.,* 65 A.3d 361, 381 (Pa. 2013).

Upon request, an agency is required to disclose information falling within the RTKL's broad definition of "record." *Hodges*, 29 A.3d at 1192; *see* Sections 102 and 901 of the RTKL, 65 P.S. §§67.102, 67.901.[7] However, "the RTKL

---

[6] We independently review an RTKL final determination of the appeals officer of an independent agency such as the OAG and may substitute our own findings of fact; our scope of review is plenary. *Hodges v. Pa. Dep't of Health,* 29 A.3d 1190, 1192 n.6 (Pa. Cmwlth. 2011); *see* Section 1301(a) of the RTKL, 65 P.S. § 67.1301(a).

[7] The RTKL defines "record" as

> [i]nformation, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

65 P.S. § 67.102. Section 901 provides:

> Upon receipt of a written request for access to a record, an agency shall make a good faith effort to determine if the record requested is a public record, legislative record or financial record and whether the agency has possession, custody or control of the identified record, and to respond as promptly as possible under the

is not a forum for the public to demand answers to specifically posed questions to either a Commonwealth or local agency." *Walker v. Pa. Ins. Dep't* (Pa. Cmwlth., No. 1485 C.D. 2011, filed June 15, 2012, slip op. at 12; *accord Gingrich v. Pa. Game Comm'n* (Pa. Cmwlth., No. 1254 C.D. 2011, filed Jan. 12, 2012), slip op. at 11 (rejecting a requester's argument that the RTKL requires an agency to research the answers to questions). Further, an agency need not create a record that does not currently exist or compile records into a new or novel format. *Hodges,* 29 A.3d at 1192; *see* Section 705 of the RTKL, 65 P.S. § 67.705.[8]

The responding agency bears the burden to prove a record does not exist by a preponderance of the evidence. *Hodges*, 29 A.3d at 1192 (citing Section 708 of the RTKL).[9] "[A]n agency may satisfy its burden of proof that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Id.*; *see also, e.g.,*

circumstances existing at the time of the request. All Applicable fees shall be paid in order to receive access to the record requested. The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied.

65 P.S. § 67.901.

[8] Section 705 provides:

When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record.

65 P.S. § 67.705.

[9] Section 708 of the RTKL quantifies the burden of proof required to establish an exemption from disclosure. *See* 65 P.S. § 67.708(a). Thus, a responding agency must establish an exemption by the preponderance of the evidence. *See, e.g., Carey v. Pa. Dep't of Corr.*, 61 A.3d 367, 374-377 (Pa. Cmwlth. 2013) (considering the department's evidence supporting a public safety exemption). "A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to 'a more likely than not' inquiry." *Id.* at 374. The *Hodges* Court required the same level of proof to establish the nonexistence of a record. *Hodges*, 29 A.3d at 1192-93.

*Reaves v. Pa. Bd. of Prob. & Parole* (Pa. Cmwlth., No. 393 C.D. 2013, filed Nov. 15, 2013) (similarly recognizing that an agency may establish the nonexistence of a record with an unsworn attestation).

Finally, the agency must respond to a request for records in good faith. *See Smith Butz, LLC v. Pa. Dep't of Env't Prot.*, 142 A.3d 941, 945 (Pa. Cmwlth. 2016); Section 901 of the RTKL, 65 P.S. § 67.901. When a request is subject to multiple interpretations, the agency's interpretation must be reasonably based on the text of the request and, if necessary, the context of the request. *See In re Melamed*, 287 A.3d 491, 499 n.15 (Pa. Cmwlth. 2022) (citations omitted). Nevertheless, absent evidence of bad faith or that responsive records exist, averments in an agency affidavit that deny the existence of such records should be accepted as true. *Smith Butz, LLC*, 142 A.3d at 945.

Initially, before addressing Petitioner's issues, we conduct a *de novo* review of the OAG's denial of Petitioner's request. As noted above, Petitioner sought "a copy of ALJ 'hearing' dated June 14, 2005 held at SCI-Graterford. All evidence documents presented, with transcript. Names (1st/last) of law Judge, and present Law Judge, deputy attorneys." RTKL Req., 2/4/23. The RTKL officer for OAG interpreted the request as "asking for various records regarding an ALJ hearing held at SCI-Graterford in 2005." Affidavit of RTKL officer Sharon K. Maitland, 5/2/23, ¶ 5. The RTKL appeals officer interpreted Petitioner's request the same way. Suppl. Determination, 5/26/23, at 2.

We find that based upon the language of the request, this interpretation of the request was reasonable. *See In re Melamed,* 287 A.3d at 499 n.15. Section 703 of the RTKL provides that "[a] written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which

7

records are being requested . . . ." 65 P.S. § 67.703. This Court has identified three factors for determining if a RTKL request is sufficiently specific: "(1) the subject matter of the request; (2) the scope of the documents sought; and (3) the timeframe for the records sought." *Pa. Dep't of Educ. v. Pittsburgh Post-Gazette*, 119 A.3d 1121, 1124-25 (Pa. Cmwlth. 2015). This court has held that the requirement that a requester identify the subject matter of a request necessitates that a requester identify the transaction or activity of the agency for which the record is sought. *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1143 (Pa. Cmwlth. 2017). In addition, the requirement that a requester identify the scope of the records sought necessitates that a requester identify a discrete group of documents, either by type or recipient. *Id.* Finally, the request should identify a finite period of time for which records are sought. *Id.*

In the instant case, Petitioner mentions a single "transaction or activity" in his request, the 2005 ALJ hearing held at SCI-Graterford. With respect to the second specificity element, the closest Petitioner comes to identifying a discrete group of documents are documents associated with the 2005 ALJ hearing. Finally, Petitioner's request fails to identify a finite period of time for his request, other than the date of the 2005 hearing. Given the limited amount of information Petitioner provided in his request, the only options available to the OAG RTKL officer or the OAG appeals officer were to interpret the portion of the request that sought names to be seeking the names of Deputy Attorneys General who participated in or were present at the 2005 ALJ hearing or to deny Petitioner's request as being insufficiently specific. Given this dilemma, the OAG RTKL officer chose to err on the side of openness and to conduct a search for possibly responsive records related to the 2005 ALJ hearing held at SCI-Graterford.

Section 901 of the RTKL requires an agency to "make a good faith effort to determine if the record requested is a public record . . . and whether the agency has possession, custody or control over the identified record . . . ." 65 P.S. § 67.901. The evidence of record demonstrates that the RTKL officer contacted the appropriate record keeper in the Criminal Law Division of the OAG and asked the record keeper to conduct a search for any responsive records. She later received an email from Will Stoycos, Senior Deputy Attorney General, who confirmed that the ALJ files for the 2005 case involving Petitioner had been destroyed in accordance with the OAG's document retention policy. *See* Affidavit of Sharon K. Maitland, ¶¶ 6, 7 & 10.

In his unsworn affidavit, Senior Deputy Attorney General William R. Stoycos stated that he reviewed Petitioner's request and that he conducted a review for potentially responsive records and was unable to locate any because all files of the Office of Administrative Law Judge (OALJ) from the year 2005 had previously been destroyed in accordance with the OAG's record retention and disposition schedule for the Criminal Law Division. Stoycos Affidavit, 5/2/23, ¶¶ B.1 – B.4. Mr. Stoycos also stated that pursuant to that schedule, "administrative files" must be retained at the agency for one year followed by storage for seven years at a secure remote archival facility, after which they are destroyed and that "administrative correspondence" must be retained at the agency for eight years followed by storage for two years at a secure remote archival facility, after which they are destroyed. Finally, he stated that the OAG's destruction of the case files of the OALJ from the year 2005 fully complies with this schedule. As a result, the Criminal Law Division has no records responsive to Petitioner's request. Stoycos Affidavit, ¶¶ B.5 & B.15.

Under *Hodges*, 29 A.3d at 1192, the burden of proving the nonexistence of records is satisfied by the unsworn attestation of the person who searched for the records. Based on the evidence of record here, we find that the OAG has met its burden of proof to demonstrate that it conducted a good faith search for records responsive to Petitioner's request and that no such records were found to exist. Therefore, we conclude that the OAG's denial of Petitioner's request on that basis was appropriate.

We now consider the issues raised by Petitioner before this Court.

### B. Conflict of Interest

Petitioner alleges that actions of OAG personnel were tainted by a conflict of interest because Petitioner had pending litigation with the OAG. Pet'r's Br. at 8 (referencing *Dunbar v. Shapiro* (Pa. Cmwlth., No. 480 M.D. 2022)). We note, however, that the RTKL contains no provisions dealing with conflicts of interest or recusals involving an RTKL officer or agency personnel involved in the RTKL process. In the absence of a conflict of interest provision in the RTKL, the relevant authority for determining the existence of a conflict of interest involving a Commonwealth employee, such as the OAG RTKL officer or other agency employee, is Pennsylvania's Public Official and Employee Ethics Act (Ethics Act).[10]

The Ethics Act prohibits public officials from engaging in conduct that constitutes a conflict of interest. Such a conflict arises when a public official or public employee uses the authority of his or her office for the private pecuniary benefit of himself, a family member, or a business with which he or a member of his immediate family is associated. 65 Pa.C.S. § 1102. Respondent asserts, and we agree, that Petitioner has not explained, nor offered any evidence, as to how any

---

[10] 65 Pa.C.S. §§ 1101-1113.

10

OAG employee involved in the RTKL process is personally involved in Petitioner's Commonwealth Court lawsuit against Governor Shapiro so as to make it inappropriate for them to participate in the handling of Petitioner's RTKL request. *See* Resp'ts' Br. at 12. Further, Petitioner has not alleged that any OAG employee has used the authority of his or her office for the private pecuniary benefit of himself, a family member, or a business with which he or a member of his immediate family is associated. Accordingly, Petitioner's claim is without merit.

### C. Petitioner's Request for Names of Deputy Attorneys General

Petitioner also asserts that the OAG erred in denying his request for "present first and last names of Deputy Attorney[s] General[.]" Pet'r's Br. at 5; *see also id.* at 8.[11] This assertion echoes an argument made by Petitioner to the RTKL appeals officer, stating that "[t]he [Attorney General] Agency RTKL officer Sharon K. Maitland's appeal response omits any reference to my request for deputy attorney generals first and last names, which was part of my initial request." Pet'r's Appeal Submission to OAG, 5/15/23 ("Objections"). We infer from these statements that Petitioner believes that the OAG misinterpreted Petitioner's original request.[12]

As discussed above, the OAG appeals officer addressed this argument in his supplemental determination, explaining that the language of Petitioner's request for the names of Deputy Attorneys General was unclear and lacked sufficient specificity. *See* Suppl. Determination at 2. For this reason, the appeals officer concluded that the OAG's initial interpretation of the request, limiting the scope of

---

[11] Based on this assertion, we infer that Petitioner has conceded that the OAG no longer has records related to the 2005 hearing and has abandoned any challenge to that portion of the OAG Final Determination.

[12] We note that the meaning of an RTKL request must be based on its text and the context of the request alone and that the requester is not permitted to alter a request on appeal. *In re Melamed*, 287 A.2d at 499, n.15; *McKelvey v. Off. of the Att'y Gen.,* 172 A.3d 122, 125 (Pa. Cmwlth. 2016).

the request to names relevant to the 2005 ALJ hearing, was the most appropriate. *See id.* We agree and therefore conclude that this issue lacks merit.

### D. Bad Faith and Sanctions

Finally, Petitioner asserts that the OAG denied his request in bad faith and asks that the OAG be assessed a penalty of $1,500, and attorney fees and other appropriate relief. *See* Pet'r's Br. at 5, 9. Under the RTKL, a court is statutorily empowered to award court costs and reasonable attorney's fees if a court reverses the final determination of an agency. Section 1304(a) of the RTKL, 65 P.S. § 67.1304(a); *Uniontown Newspapers Inc. v. Pa. Dep't of Corrs.,* 243 A.3d 19, 34 (Pa. 2020). However, to award fees and costs in a case where the agency has responded to the request, the court must find that an agency either "willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith" or asserted "exemptions, exclusions or defenses . . . [that] were not based on a reasonable interpretation of law." Section 1304(a) of the RTKL, 65 P.S. § 67.1304(a). Similarly, Section 1305 of the RTKL provides that a court may also award a civil penalty of $1,500 against an agency if the agency "denied access to a public record in bad faith." 65 P.S. § 67.1305(a).

Before imposing costs, fees or penalties under either Sections 1304 or 1305, the court must make factual findings in support of its conclusion that the agency has acted in bad faith. *Bagwell,* 155 A.3d at 1140. Examples of bad faith include an agency's failure to make a good faith search for information responsive to a request and determine whether that information is public, *id.* at 1140-1141;

*Uniontown Newspapers*, or a failure to comply with a final determination of the Office of Open Records. *Bagwell*, 155 A.3d at 1141.[13]

In this case, we have not reversed the agency's final determination, nor have we found that it was unreasonable. Therefore, we may not award attorney fees or costs of litigation under Section 1304(a) of the RTKL. With respect to Section 1305, we note that Petitioner's only allegation of bad faith on the part of the agency in responding to his request is his assertion of the existence of a conflict of interest, which we have not found to be present. In reviewing the record before the OAG appeals officer, we have found that the OAG's interpretation of the request was reasonable. We also found that the OAG appeals officer reasonably relied on affidavits from the OAG RTKL officer and a senior OAG attorney from the Criminal Law Division in finding that a good faith search for responsive records had been conducted and that search had revealed no responsive records existed in the possession of the OAG. For these reasons, we decline to make a finding of bad faith with respect to the OAG's denial of Petitioner's request. Because the criteria for imposing sanctions on the OAG under Sections 1304 and 1305 of the RTKL are not present, we also decline to impose sanctions.

## IV. CONCLUSION

In sum, after conducting our *de novo* review in this case, we find that the OAG's interpretation of Petitioner's request was reasonable. We also find that the affidavits submitted by the OAG were sufficient to establish that the OAG

---

[13] In *Bagwell*, the Commonwealth Court found that the District Attorney: (1) based its denial on the identity of the requester and the presumed intended use of the records in violation of Section 302 of the RTKL; (2) failed to cite any legal authority in support of its reasons for denial in violation of Section 903 of the RTKL; (3) did not make a good faith search for the requested records in violation of Section 901 of the RTKL; and (4) misrepresented binding precedent and the state of the law throughout the proceedings. 155 A.3d at 1142.

engaged in a good faith effort to locate responsive records in its possession but no such records were found to exist. We conclude, therefore, that the OAG's denial of Petitioner's request was appropriate. *See Hodges*, 29 A.3d at 1192 n.6; Section 1301(a) of the RTKL, 65 P.S. § 67.1301(a).

Additionally, Petitioner has failed to establish a conflict of interest between Petitioner and the OAG. *See* 65 Pa.C.S. § 1102. Moreover, Petitioner's suggestion that OAG misinterpreted his original request is not persuasive because any other interpretation would render the request insufficiently specific. *See Pittsburgh Post-Gazette*, 119 A.3d 1121, 1124-25. Finally, Petitioner has presented no evidence of bad faith that would justify the imposition of sanctions on the agency. *See Bagwell,* 155 A.3d at 1140.

Accordingly, we affirm.

_____
**LORI A. DUMAS, Judge**

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Gregory Dunbar,                           :
             Petitioner          :
                                               :
           v.                        :    No. 670 C.D. 2023
                                               :
Office of Attorney General,               :
             Respondent         :

## O R D E R

AND NOW, this 11th day of September, 2024, the Office of Attorney General's Appeals Officer's Final Determination entered May 17, 2023, and Supplemental Determination entered May 26, 2023, are AFFIRMED.

_____
**LORI A. DUMAS, Judge**