IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Smith Butz, LLC,                             :
                                             : No. 2026 C.D. 2015
                    Petitioner               : Argued: April 11, 2016
                                             :
              v.                             :
                                             :
Pennsylvania Department of                   :
Environmental Protection,                    :
                                             :
                    Respondent               :


BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


OPINION BY SENIOR JUDGE FRIEDMAN            FILED:  June 17, 2016


         Smith Butz, LLC (SB) petitions for review of the September 17, 2015, final determination of the Office of Open Records (OOR), which dismissed SB's appeal from the Pennsylvania Department of Environmental Protection's (DEP) open records officer's (Records Officer) decision informing SB that it did not have in its possession, custody, or control the records requested under the Right-to-Know Law (RTKL).[1]  We affirm.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

On June 11, 2015, the Records Officer received SB's RTKL request[2] seeking:

> All records associated with [the] August 30, 2010 Notice of Violation [(NOV)[3]] for Yeager Impoundment, with said [NOV] relating to 1. Failure to properly store, transport, process or dispose of a residual waste; and 2. Failure to properly control or dispose of industrial or residual waste to prevent pollution of the waters of the Commonwealth.
>
> This request seeks all records, including but not limited to records associated with any investigations, complaints and the resolution of the [NOV].

(RTKL Request Form at 1.)

By letter dated July 16, 2015, the Records Officer responded to SB, stating that DEP "does not have the records that you request in its possession, custody or control."[4]  (Records Officer Decision, 7/16/15, at 1.)  Further, "'[i]t is not a denial

---

[2] The RTKL request form names Brendan O'Donnell, Esquire as the requestor and SB as the company making the request.  (RTKL Request Form at 1.)

[3] An NOV is defined as "[a] *formal communication* in which the operator is notified of a violation.  Typically a written NOV requests the notified party to respond to the NOV and describe the actions they have taken or will take to correct the violation."  (DEP, Office of Oil and Gas Management, Doc. No. 820-4000-001, Standards and Guidelines for Identifying, Tracking, and Resolving Oil and Gas Violations, 1/17/15, at §III.A.2. (emphasis added).)  An NOV is the minimum action required for any violation, however, an NOV may not be necessary "if the violation is corrected before the end of an inspection . . . [and] is noted on the inspection report." (*Id.*, at §II.A.)  An "NOV is to advise the recipient of the existence of a violation, not to compel an action." (*Id.*, at §III.A.2.)

[4] The Records Officer initially responded to SB's RTKL request on June 18, 2015, advising SB that it would require up to an additional 30 days to respond to SB's request.  (Records Officer Response, 6/18/15, at 1.)

of access [to records] when an agency does not possess records and [there is no] legal obligation to obtain them.'" (*Id.* (citation omitted).) On July 21, 2015, SB appealed to the OOR.

Before the OOR, SB argued that an August 30, 2010, NOV exists because: (1) it is listed on DEP's eFACTS[5] system, (2) it is referenced in a May 2015 study on hydraulic fracturing conducted by the United States Department of Environmental Protection,[6] and (3) a small leak related to the Yeager Impoundment was referenced in an August 30, 2010, e-mail between two representatives of Range Resources-Appalachia, LLC (Range Resources), the operator of the Yeager Impoundment.

On July 21, 2015, the OOR invited the parties to supplement the record. On July 30, 2015, DEP submitted a position statement and two attestations, arguing that no responsive records exist. DEP included an attestation signed under penalty of perjury from Jeffrey Brown, a file clerk in its Southwest Regional Office (Office), who affirmed that he searched the records in the Office and questioned Office personnel, including Dan Counahan, who supervises Bryon Miller, the DEP inspector who inspected the Yeager Impoundment on August 30, 2010. Brown concluded that "while . . . inspector . . . Miller described violations in the 'Violations Details' section of the eFACTS system as the result of his August 30, 2010, inspection of the Yeager

---

[5] DEP's eFACTS system is a free public website containing information regarding DEP-issued permits, inspections, and violations.

[6] SB submitted an enlargement of Table C31 from this study, titled "Notice of Violations Summary, Southwestern Pennsylvania, Southern Area," at oral argument before this court.

3

Impoundment, no records exist responsive to [SB's] request." (Brown Attestation at 2.) DEP also submitted a similar attestation from Eric Gustafson, the Program Manager of the Bureau of the Oil and Gas Operation's Southwest District. Gustafson attested that he conducted a thorough search for the requested records and determined that DEP did not possess an August 30, 2010, NOV. (Gustafson Attestation at 2.)

On that same date, SB submitted a memorandum of law in support of its appeal and several exhibits. SB argued that DEP's evidence is insufficient because DEP only searched the Office and did not provide an attestation from Miller.

On August 12, 2015, the OOR reopened the record for the parties to clarify whether "an August 30, 2010 [NOV] was issued related to the Yeager Impoundment; and [whether] . . . the record exists in another [DEP] location, including [DEP's] Harrisburg offices." (OOR Final Determination at 3.) The OOR invited DEP to submit evidence from Miller explaining why an NOV does not exist. (*Id.*)

On August 21, 2015, DEP submitted Miller's attestation, signed under penalty of perjury, which states in part:

> 4. On or about August 24, 2010, Carla Suszkowski of Range Resources . . . telephoned me and stated that approximately four to five barrels of clarified brine were released from secondary containment near the Yeager Impoundment in Amwell Township, Washington County.
>
> 5. As a result of this telephone call, I entered into DEP's eFACTS system the "Violation Details" which [SB's] request lists as numbers 1 and 2.

4

6. I did not draft or issue a [NOV]. While I entered violation details into the eFACTS system due to the release at the Yeager Impoundment site, and though I intended to issue a [NOV], various factors precluded me or anyone else at DEP from issuing a [NOV].

7. Nowhere in my eFACTS entry did I indicate that I issued a [NOV].

8. If DEP had issued a [NOV] on August 30, 2010, regarding the Yeager Impoundment, I am the DEP staff person who would have sent it or I would know if someone else had done so, including staff in DEP's Central Office in Harrisburg or staff in my other DEP office.

9. I know of no other DEP employee who drafted or issued a [NOV].

10. Had another DEP employee issued a [NOV], I would be aware because I am the individual responsible for inspecting surface activities at oil and gas well sites for the geographic area that includes the Yeager Impoundment.

11. Had a [NOV] been issued, I would be responsible for subsequent inspections ensuring that any violation was rectified and brought into compliance with [the] Commonwealth['s] statutes and regulations. At no time did I conduct, nor was I requested to conduct, any inspection of the Yeager Impoundment to ensure compliance subject to a [NOV].[7]

12. Had a [NOV] been issued, a file would have been created to store records regarding the [NOV]. No such file related to a [NOV] exists because no [NOV] was ever issued.

13. Because DEP did not issue a [NOV] on August 30, 2010, no records responsive to [SB's] request exist in

---

[7] Miller states that he did not conduct any inspections of the Yeager Impoundment pursuant to an NOV. Miller, however, does not state that he did not otherwise inspect the Yeager Impoundment.

DEP's possession, custody or control, including that of DEP's Central Office in Harrisburg and any other DEP office.

14. Because I was previously out of the office on leave, I was not able to complete this affidavit until this time; nor was I able to advise DEP and Bureau staff in a timely fashion that their file search was unnecessary because the requested [NOV] was never issued.

(Miller Attestation at 1-2.)

On that same date, SB filed a supplemental statement with exhibits, providing further background and context concerning its RTKL request. (SB Supplement, 8/21/15, at 1-8.) SB submitted the supplement to "demonstrate[] [DEP's] motivation to seemingly 'misplace' the August 30, 2010 [NOV]." (*Id.* at 2.) In support of its argument, SB attached, among other items, three transcripts from other DEP hearings involving other parties.[8] (*Id.* at 4; Exs. C, D, F.)

The OOR determined that, while Miller's attestation does not elaborate on the reasons he or anyone else with DEP failed to issue an NOV, the evidence submitted by DEP credibly demonstrated that DEP did not issue an August 30, 2010, NOV related to the Yeager Impoundment. Thus, the OOR determined that the

---

[8] We note that in DEP's brief and at oral argument, DEP suggested that it was improper for SB to introduce transcripts from unrelated cases. We agree; however, the transcripts' submission did not affect the outcome of this case.

requested records did not exist and denied SB's appeal. SB now petitions this court for review.[9]

SB contends that the OOR erred in concluding that DEP sustained its burden to demonstrate that no responsive records exist under the RTKL. We disagree.

Section 703 of the RTKL states that a "written request should identify or describe the records sought with sufficient specificity to enable the agency to ascertain which records are being requested." 65 P.S. §67.703. Upon receipt of the RTKL request, the agency must then "make a good faith effort to determine whether it has 'possession, custody[,] or control of the identified record.'" *Department of Corrections v. Disability Rights Network of Pennsylvania*, 35 A.3d 830, 832 (Pa. Cmwlth. 2012)(citation omitted). If the agency responding to the RTKL request determines that the record does not exist, it has "[t]he burden of proving [that the] record does not exist." *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011). "[A]n agency may satisfy its burden of proof that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Id.*; *see Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010) (finding that an unsworn attestation and a notarized affidavit swearing to the non-existence of a record were enough to satisfy the department's burden of demonstrating the

---

[9] Our standard of review under the RTKL is *de novo*, and we may adopt the agency's findings or substitute them with our own. *Bowling v. Office of Open Records*, 75 A.3d 453, 474 (Pa. 2013). Our scope of review under the RTKL is plenary. *Id.* at 476.

7

record's non-existence). In the absence of any competent evidence that the agency acted in bad faith or that the agency records exist, "the averments in [DEP's] affidavits should be accepted as true." *McGowan v. Pennsylvania Department of Environmental Protection*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014).

Here, SB requested "[a]ll records associated with [the] August 30, 2010 [NOV] for [the] Yeager Impoundment . . . . This request seeks all records, including but not limited to records associated with any investigations, complaints and the resolution of the [NOV]." (RTKL Request Form at 1.)

Initially, SB asserts that the NOV exists based upon DEP entries on its eFACTS system. Our review of the record, however, reveals no credited testimony or evidence that would support such a finding. The record reveals that a representative from Range Resources self-reported a violation at the Yeager Impoundment on August 24, 2010, and, as a result, Miller entered the violation details into the eFACTS system. Miller attested that he did not issue an NOV and there is no indication on the eFACTS system that an NOV was issued. Further, two other attestations submitted into the record support the determination that an NOV was not issued on August 30, 2010. The record is void of any testimony or evidence that an NOV was issued. Specifically, there is no formal communication from DEP notifying Range Resources of any violation on August 30, 2010. Thus, DEP established that it does not possess the record requested by SB.

Next, SB contends that it was requesting all records related to the Yeager Impoundment *violations* that were entered into the eFACTS on August 30, 2010, not

8

just the records associated with the NOV. (SB Br. at 22-26.) However, SB only requested the NOV and the records related to the NOV. SB did not request records regarding an August 30, 2010, violation, inspection, or eFACTS entry.

Once an RTKL request is submitted, a requester is not permitted to expand or modify the request on appeal. *Disability Rights Network*, 35 A.3d at 833. DEP interpreted SB's request as it was plainly written and conducted a good faith search to determine whether it had the records in its possession, custody, or control. "An agency is only required, however, to search for and provide *the records which are requested.*" *Hodges*, 29 A.3d at 1193. Further, "[w]e presume that Commonwealth agencies will act in good faith in discharging their statutory duties under the RTKL." *Commonwealth v. Donahue*, 98 A.3d 1223, 1239 (Pa. 2014). Miller confirmed that an NOV was not issued. Thus, there are no records associated with an NOV.[10] SB cannot now expand its request to include all records relating to the August 30, 2010, violations. *See Disability Rights Network*, 35 A.3d at 833.

Finally, SB argues that DEP's attestations are contradictory and cannot support DEP's position that an NOV was not issued. Our review of the affidavits fails to reveal the inconsistencies SB asserts. All attestations state that DEP does not have in its possession, custody, or control the records SB requests, i.e., an NOV and all records related to that NOV. It is irrelevant whether the attestations state that no NOV was drafted or issued, that "no records exist," or that "no [NOV] issued on

---

[10] DEP does not contend that records of an August 30, 2010, violation do not exist; rather it contends that SB did not request violation records.

August 30, 2010" is in DEP's possession.[11]  (*See* Miller Attestation at 1; Brown Attestation at 2; Gustafson Attestation at 2.[12])  SB also asserts that the attestations of Brown and Gustafson conflict with Miller's attestation because they refer to an August 30, 2010, inspection of the Yeager Impoundment by Miller and Miller denies that he conducted an inspection.  However, Miller's attestation does not confirm or deny that he inspected the Yeager Impoundment on August 30, 2010.  Miller merely denies performing an inspection *pursuant to an NOV* on that date.  (*See* Miller Attestation at 2.)  All three attestations were executed by DEP employees familiar with agency records and detail the steps they took to reach their determinations.[13] There is no evidence of bad faith, and the attestations are detailed, non-conclusory, and credibly support DEP's determination that the records do not exist.

---

[11] We note that Gustafson attests not that "no violations" occurred but that "no Notice of Violation issued." (Gustafson Attestation at 2.)

[12]  DEP responded to SB's RTKL request that "[DEP] does not have the records that you request in its possession, custody or control." (Records Officer Decision, 7/16/15, at 1.)  Brown responded:  "[N]o records exist responsive to [SB's] request in DEP's possession, custody or control." (Brown Attestation at 2.) Gustafson responded:  "[DEP] has in its possession, custody or control no [NOV] issued on August 30, 2010 for the Yeager Impoundment." (Gustafson Attestation at 2.)  Miller responded:  "Because DEP did not issue a [NOV] on August 30, 2010, no records responsive to [SB's] request exist in DEP's possession, custody or control." (Miller Attestation at 2.)

[13] SB also argues that Miller failed to explain why an NOV wasn't issued on August 30, 2010.  However, an agency must prove that it does not possess a requested record; it does not have to explain why the requested record was not created.  *See Hodges*, 29 A.3d at 1192.  Further, an attestation that a record does not exist satisfies the agency's burden.  *See Moore*, 992 A.2d at 908-09 & n.4.

Here, the letter of SB's request calls for records specific to the DEP's August 30, 2010, NOV, not for records related to a general violation that might have occurred on August 30, 2010, but did not ultimately move DEP to issue a formal NOV. DEP submitted three attestations that it acted in good faith in searching for and determining that the requested records do not exist because an NOV for the August 30, 2010, violations was never issued. The question of whether DEP acted appropriately or in good faith when it noted on eFACTS that a violation occurred on August 30, 2010, and did not ultimately issue an NOV, is not before us and has no bearing on SB's request as it is currently framed. We note that SB could have submitted a new RTKL request at any time, and in fact still could submit a new RTKL request, seeking the records associated with the August 30, 2010, violations that DEP recorded on eFACTS but did not ultimately find worthy of an NOV.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Smith Butz, LLC,                        :
                                        : No. 2026 C.D. 2015
                    Petitioner          :
                                        :
          v.                            :
                                        :
Pennsylvania Department of              :
Environmental Protection,               :
                                        :
                    Respondent          :

## O R D E R

AND NOW, this 17th day of June, 2016, we hereby affirm the September 17, 2015, final determination of the Office of Open Records.

ROCHELLE S. FRIEDMAN, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Smith Butz, LLC,                          :
                    Petitioner            :
                                          :   No.  2026 C.D. 2015
          v.                              :
                                          :   Argued:  April 11, 2016
Pennsylvania Department of                :
Environmental Protection,                 :
                    Respondent            :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


DISSENTING OPINION BY
JUDGE McCULLOUGH                                 FILED:  June 17, 2016


          I respectfully dissent because I believe the Pennsylvania Department

of Environmental Protection (DEP) acted in bad faith in failing to provide the

records requested by Smith Butz, LLC (SB).

          As the Majority notes, SB's Right-to-Know Law (RTKL)[1] request

sought:

          All records associated with [the] August 30, 2010 Notice
          of Violation [NOV] for Yeager Impoundment, with said
          [NOV] relating to 1. Failure to properly store, transport,
          process or dispose of a residual waste; and 2. Failure to
          properly control or dispose of industrial or residual waste
          to prevent pollution of the waters of the Commonwealth.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101 – 67.3104.

> This request seeks all records, including but not limited
> to records associated with any investigations, complaints
> and the resolution of the [NOV].

(RTKL Request Form at 1.) DEP denied the request stating that it "does not have the records that you request in its possession, custody or control." (Records Officer Decision, 7/16/15, at 1.) DEP's denial was premised upon the fact that no NOV was ever issued on August 30, 2010.

However, Byron Miller, a DEP inspector, admitted in an attestation that: Carla Suszkowski, a representative of Range Resources, the company that operated the Yeager Impoundment, had self-reported on August 24, 2010, the release of four to five barrels of clarified brine from secondary containment; and, as a result of this report, he entered into DEP's eFACTS system "Violation Details" which correspond with SB's requests listed above as numbers 1 and 2.[2] Miller also stated that he did not draft or issue a NOV. Nevertheless, Miller's eFACTS entry, dated August 30, 2010, identifies two violations, "[f]ailure to properly store, transport, process or dispose of a residual waste" and "[f]ailure to properly control or dispose of industrial or residual waste to prevent pollution of the waters of the Commonwealth." (Reproduced Record at 10a.) Additionally, an attestation from Jeffrey Brown, a file clerk in DEP's Southwest Regional Office, reflects that Miller conducted an inspection of the Yeager Impoundment on August 30, 2010.

While DEP may be technically correct that an August 30, 2010 NOV was never issued, it is clear from the record herein that DEP received a report of potential violations at the Yeager Impoundment on August 24, 2010, conducted an investigation on August 30, 2010, and identified two violations in its eFACTS

_____

[2] DEP's eFACTS system is a public website containing information regarding DEP-issued permits, inspections, and violations.

system. Further, at oral argument, DEP admitted that had SB omitted the terms "Notice of Violation" from its request, certain investigative materials would have been responsive to SB's request.

Given that SB's RTKL request included "records associated with any investigations, complaints and the resolution of the [NOV]," RTKL Request Form at 1, and the fact that this Court must "interpret the RTKL liberally to effect its purpose—that being, 'to promote access to official government information in order to prohibit secrets, scrutinize actions of public officials, and make public officials accountable for their actions,'"[3] I would conclude that DEP acted in bad faith in failing to provide SB with responsive records related to DEP's August 30, 2010 investigation at the Yeager Impoundment. Accordingly, I would reverse the final determination of the Office of Open Records dismissing SB's appeal.

_____
PATRICIA A. McCULLOUGH, Judge

_____

[3] *Allegheny County Department of Administrative Services v. A Second Chance, Inc.*, 13 A.3d 1025, 1034 (Pa. Cmwlth. 2011) (citation omitted).