# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Miller,                          :
                 Appellant       :
                                   :
               v.                   :  No. 596 C.D. 2023
                                     :  Submitted: August 9, 2024
County of Lancaster                      :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
                     HONORABLE CHRISTINE FIZZANO CANNON, Judge
                     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
PRESIDENT JUDGE COHN JUBELIRER          FILED: April 11, 2025

Michael Miller (Requester), pro se, appeals from the Court of Common Pleas of Lancaster County's (common pleas) Order, dated May 12, 2023, affirming a Final Determination of the Office of Open Records (OOR). Through the Final Determination, the OOR denied Requester's administrative appeal from the County of Lancaster's (County) denial, in part, of a records request submitted pursuant to the Right-to-Know Law (RTKL).[1] Upon careful review, common pleas' disposition is supported by substantial evidence, and we discern no error of law. Therefore, we affirm.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

## I. BACKGROUND

### A. The RTKL Request and County's Denial

On October 26, 2022, Requester submitted a RTKL request (Request), seeking voter records from the May 17, 2022 primary election, including: (1) "copies of the scanned images of all mail-in ballots that were created for the May 17, 2022 primary," (2) "copies of the scanned images of all mail-in ballot envelopes on which the executed declarations appear," (3) "copies of the scanned images of all applications for ballots," and (4) "a separate file[] [of] the scanned images of all the mail-in ballots that were recorded as undervotes[2] for the Senate District 36 election." (Reproduced Record (R.R.) at 2a-3a.)

By letter dated November 2, 2022, the Request was granted in part, and denied in part, pursuant to Section 705 of the RTKL, 65 P.S. § 67.705,[3] and the Pennsylvania Election Code (Election Code).[4] (R.R. at 4a-6a.) County denied the Request as to items (1), (3), and (4), asserting that County did not possess images in scanned format responsive to these requests, and granted in part item (2), asserting that there were two images of scanned mail-in ballot envelopes responsive to this portion of the Request but that those images were "the only two existing mail-in ballot envelopes in electronic format." (*Id.* at 4a-6a.) County provided Requester with access to the two scanned mail-in ballot envelopes through an in-person inspection, "subject to proper regulation for safekeeping of [Section 308 of] the . . .

---

[2] "An 'under-vote' occurs when the voter votes for fewer candidates for a given office than are to be elected to that office." *In re Pet. to Contest the Gen. Election for Dist. Justice in Judicial Dist. 36-3-03 Nunc Pro Tunc*, 695 A.2d 476, 483 n.4 (Pa. Cmwlth. 1997).

[3] Section 705 of the RTKL provides: "When responding to a request for access, an agency shall not be required to create a record which does not currently exist or to compile, maintain, format or organize a record in a manner in which the agency does not currently compile, maintain, format or organize the record." 65 P.S. § 67.705.

[4] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

Election Code (25 P.S. § 2648)," and further subject to compliance with seven access conditions. (R.R. at 5a.) Requester timely appealed the denial to the OOR.[5] (*Id.* at 16a-18a.)

### B. Administrative Appeal to the OOR

On November 17, 2022, Requester filed a timely administrative appeal with the OOR, claiming:

> the requested records are public records in the possession, custody or control of the agency; the records do not qualify for any exceptions under [the] [RTKL], are not protected by a privilege, and are not exempt under any Federal or State law or regulation; and the request was sufficiently specific.

(*Id.* at 16a.) Specifically, as to Request items (1), (3), and (4), Requester asserted, in relevant part:

> 2. **Exhibit 1** (attached) is a media release by the county board of elections that explains that approximately 23,000 mail[]ballots were run through scanners.
>
> 3. Each scanning incident creates a digital image of the paper ballot.
>
> 4. As these images are counted, they are ballots.
>
> 5. These are the records I have requested.
>
> 6. [County's] denial invokes [RTKL] Section 705.

---

[5] County requests that this Court take judicial notice of another pending case, *Miller v. County of Lancaster* (Pa. Cmwlth., No. 595 C.D. 2023), where Requester appealed a separate records request made under the RTKL, challenging County's imposition of similar access conditions. (County's Brief at 5 n.2.) "It is well settled that this Court may take judicial notice of pleadings and judgments in other proceedings where appropriate . . . . [and] [t]his is particularly so where . . . the other proceedings involve the same parties." *Lycoming County v. Pa. Lab. Rels. Bd.*, 943 A.2d 333, 335 n.8 (Pa. Cmwlth. 2007) (citations omitted). As such, we take judicial notice of case number 595 C.D. 2023.

7. [County] further responds "[] [C]ounty does not maintain the records you are requesting in [sic] these items in a scanned format". [sic]

8. [] [R]equest[er] moves the Appeals Officer to clarify that no image was ever created.

9. [Section 1307-D(a),] 25 P.S. §3150.17(a) states in part: "*General rule.--All official <u>mail-in ballots</u>, files, applications for ballots and envelopes on which the executed declarations appear, and all <u>information and lists</u> are designated and declared to be public records and <u>shall be safely kept</u> for a period of two years . . . .*"

(R.R. at 17a (emphasis in original).) As to Request item (3), Requester claimed that:

14. As shown in the attached exhibit, the county commissioners admit receiving ~23,000 mail-in ballots.

15. Presumably, most <u>mail</u> ballots were received in a <u>mail</u> envelope.

16. This is the item I am requesting

. . . .

19. The Request[er] moves the Appeals Officer to order [County] to provide [] [R]equest[er] a written clarification about the existence and format of the envelopes, in the instance a different request is warranted to obtain these records.

(R.R. at 18a (emphasis in original).)

During the administrative appeal, both parties submitted papers in support of their respective positions.[6] In support of County's denial, County proffered two

---

[6] In support, Requester submitted various correspondence to the OOR, which is succinctly summarized by common pleas in its Findings of Fact. (Common Pleas' Opinion (Op.), Findings of Fact (FOF), R.R. at 142a-46a.) We adopt common pleas' Findings of Fact as they relate to, and recount, Requester's arguments presented during the administrative appeal. *See Segelbaum v. York County* (Pa. Cmwlth., No. 1075 C.D. 2022, filed Oct. 30, 2024), slip op. at 2 n.2 (adopting factual background section from trial court opinion in RTKL appeal where it was supported by substantial evidence).

attestations from Christa Miller, the Chief Registrar and Chief Clerk of Elections for Lancaster County (Chief Registrar), which were made subject to the penalties of perjury. The initial attestation (Initial Attestation) indicated, in relevant part, that Chief Registrar "diligently and thoroughly searched the records held within the Lancaster County Voter Registration Office regarding the requested documents." (Initial Attestation ¶ 6, R.R. at 13a.) The Initial Attestation further indicated that "[t]he Lancaster County Voter [R]egistration Office does not maintain mail-in ballots, mail-in ballot envelopes, applications for mail-in ballots or mail-in ballots recorded as undervotes in a scanned format . . . [and] only maintains the requested records in paper format." (*Id*. at 13a, ¶¶ 7-8.)

Subsequently, upon request for additional competent evidence from the OOR,[7] Chief Registrar submitted the Supplemental Attestation (Supplemental Attestation), again indicating that a diligent and thorough search of the "records held within the Lancaster County Voter Registration Office regarding the requested information" was conducted. (Supplemental Attestation ¶ 6, R.R. at 97a.) The Supplemental Attestation, in part, also stated:

> 11. [] County has never used digital means for record retention of mail-in ballots or any type of ballot or election document, and instead relies on maintenance of the actual physical paper documents to fulfill its mandated record keeping requirements.
>
> 12. [] County did not utilize Hart[] [InterCivic, Inc.'s] digital image scanning capability in the 2022 primary or general election.[8]

---

[7] On November 23, 2022, the OOR appeals officer requested via email that County "provide competent evidence, in the form of an attestation or affidavit, addressing whether the voting machines utilized by [] County for the May 17, 2022 election scanned and retained images of the requested records." (R.R. at 51a.)

[8] Hart InterCivic, Inc. is a vendor used by County, and County leases its voting equipment system from same. (County's Brief at 7.)

13. Furthermore, use of this capability requires the establishment of a procedure to export these scanned images.

14. Additionally, if [] County would decide to maintain mail-in ballots in digital form, we would also need to create a secure digital storage system with security policies and procedures.

15. [] County has not established a procedure to export scanned images, nor has [] County developed a secure network or digital storage system or policies for mail-in ballots.

(*Id.* ¶¶ 11-15, R.R. at 97a-98a.) The Supplemental Attestation further indicated that pursuant to the Election Code, County is required to "maintain ballots and election materials for two years and that is the basis for [] County's record retention policies that maintain these records in paper format only." (*Id.* ¶ 20, R.R. at 98a.)

On December 1, 2022, the OOR issued the Final Determination, denying the appeal and instructing County that it was not required to take any further action. (Final Determination, R.R. at 118a.) The OOR credited Chief Registrar's attestations finding, in pertinent part, that "County relies upon the physical ballots to fulfill its record keeping requirements and does not rely upon image scans for records retention of ballots." (*Id.* at 116a.) Thus, the OOR concluded that "County has demonstrated that it does not maintain scanned images of mail-in ballots, mail-in ballot envelopes, applications for ballots and mail-in ballots that were recorded as undervotes as part of its records retention policy and . . . only maintains [] physical documents."[9] (*Id.*) Requester then petitioned common pleas for review.[10]

---

[9] The OOR also concluded that, pursuant to Section 1307-D(a) of the Election Code, 25 P.S. § 3150.17(a), County properly granted Requester access to the two images of scanned mail-in ballot envelopes responsive to Request item (2) and, further, declined to make a finding of bad faith. (Final Determination, R.R. at 113a-14a, 117a.)

[10] Requester's petition for review to common pleas is located on pages 119a-41a of the Reproduced Record.

### C. Petition for Review to Common Pleas[11]

Requester sought review from common pleas where, sitting as the Chapter 13 court, common pleas properly conducted a *de novo* review of the Final Determination. (Common Pleas' Opinion (Op.) at 6, R.R. at 147a (citing Section 1302 of the RTKL, 65 P.S. § 67.1302).) Through the petition for review, Requester asked common pleas, in relevant part, to "[q]uash all items in the [F]inal [D]etermination found to be in error" and "[o]rder the agency to provide the requested records." (R.R. at 141a.) County responded by claiming that the OOR correctly denied the administrative appeal because County demonstrated it did not have possession, custody, or control of the requested records, and further argued that the OOR did not err in admitting evidence proffered by County and did not err in relying on Chief Registrar's Initial and Supplemental Attestations as competent evidence.[12]

---

[11] "Under the RTKL, when [a] request for records was directed to a local agency, the court of common pleas is the 'Chapter 13' court and reviews the determination issued by [the] OOR with a *de novo* standard and a plenary scope[;]" however, "the court of common pleas may substitute its own findings of fact for that of the agency or rely upon the record created below." *Off. of the Dist. Att'y of Phila. v. Bagwell*, 155 A.3d 1119, 1123 n.3 (Pa. Cmwlth. 2017) (emphasis in original) (citing *Bowling v. Off. of Open Recs.*, 75 A.3d 453, 477 (Pa. 2013)). In *Bowling*, our Supreme Court explained the meaning of the phrase "Chapter 13" court:

> Decisions of OOR appeals officers are reviewable upon petitions for review—to the Commonwealth Court when the matter arises from a determination made by a Commonwealth agency, or to the court of common pleas when the matter arises from a determination made by a local agency (the Commonwealth Court and the courts of common pleas will often hereinafter be collectively referred to as the "Chapter 13 courts," in reference to the chapter of the RTKL in which their relevant duties are discussed).

75 A.3d at 458 (citation omitted).

[12] Requester did not include this response in the Reproduced Record. The full response, totaling 20 pages, is located in the Original Record. In the response, County also argued that the

By order dated May 12, 2023, common pleas affirmed the OOR's Final Determination without a hearing. (R.R. at 155a.) In its accompanying opinion, relying on *Hodges v. Pennsylvania Department of Health*, 29 A.3d 1190, 1192 (Pa. Cmwlth. 2011), and *Nguyen Vu v. Pennsylvania Board of Probation and Parole*, 200 A.3d 627 (Pa. Cmwlth. 2018), common pleas reasoned that an unsworn attestation by the person who searched for the record is sufficient to meet an agency's burden, and, absent any evidence showing the existence of the requested records or an agency's bad faith, averments in an affidavit should be accepted as true.[13] In concluding that County had met its burden, common pleas credited Chief Registrar's Initial and Supplemental Attestations, holding that County sufficiently demonstrated through competent evidence that the requested records were not in County's possession, custody, or control. Common pleas explained that Requester

> claims that [County's] letter and [Chief Registrar's] affidavit from August 25, 2022, pertaining to the prior RTKL request, are proof that the records [Requester is] requesting in the instant case do exist, and thus [County] is acting in bad faith by now claiming they do not. However, there is no evidence that the "digital images of ballots" said to be contained in the [Cast Vote Record (]CVR[)] are the "scanned images of mail-in ballots" sought by [Requester] currently. Moreover, [Requester] did not seek review of the OOR's final determination in that case; therefore, [common pleas] will not make a decision pertaining to the CVR and whether it is exempt from disclosure under the Election Code as determined by the OOR. As such, [Requester] has failed to prove either that the requested records exist or that [County] is acting in bad faith.

(Common Pleas' Op. at 10, R.R. at 151a.) Requester timely appealed to this Court.

---

OOR did not err by denying Requester an *in camera* review of the requested records and did not err in denying Requester's purported right to property without due process claim. (Original Record, Item 10.)

[13] Common Pleas' Opinion, dated May 12, 2023, is located on pages 142a-55a of the Reproduced Record.

## II. PARTIES' ARGUMENTS

On appeal, Requester presents multiple arguments.[14] Requester first argues, citing Sections 1301(a) and 708(a)(1) of the RTKL, 65 P.S. § 67.1301(a), 65 P.S. § 67.708(a)(1), that an agency cannot deny a records request "on grounds an agency 'does not currently maintain them[,]' [and] [i]f the record exists and does not fall under one of the specific exemptions, it must be released."[15] (Requester's Brief (Br.) at 5 (citing *Uniontown Newspapers, Inc. v. Pa. Dep't of Corr.*, 185 A.3d 1161, 1172 (Pa. Cmwlth. 2018)).) Requester, seemingly citing to Sections 901 and 506(d) of the RTKL, 65 P.S. § 67.901, 65 P.S. § 67.506(d), asserts that "the records below contain no evidence whatsoever from [] County, let alone the evidence required by § 901 and § 506(d)[,] [and,] [t]herefore, these opinions do not comply with § 708(a)(1) . . . ."[16] (*Id.*)

---

[14] Requester erroneously asserts that this is an appeal of the OOR's Final Determination and that this Court's standard of review is *de novo* and scope plenary. (Requester's Br. at 1 (citing *Bowling*, 75 A.3d at 474, 477).) Requester also asserts, albeit incorrectly, that the burden of proof on appeal to this Court is the preponderance of the evidence standard. (*Id.* (citing Section 708(a)(1) of the RTKL, 65 P.S. § 67.708(a)(1)).) Requester also claims that this is an appeal from common pleas and this Court "should review the opinions of Judge [] Ashworth and [the] OOR appeals officer." (*Id.* at 3.) However, to clarify, this is not an appeal of the OOR's Final Determination, which was appealed to common pleas through the petition for review filed by Requester with common pleas. (R.R. at 119a-41a.) Rather, as we have already indicated, common pleas sat as the Chapter 13 or "reviewing court." Thus, where a RTKL appeal is taken **from** common pleas, as here, this Court looks to whether the findings of fact are supported by substantial evidence and whether the trial court committed an error of law. *See California Borough v. Rothey*, 185 A.3d 456, 462 n.6 (Pa. Cmwlth. 2018) (citations omitted).

[15] Many of Requester's arguments on appeal relate to the proceedings before the OOR and its Final Determination. However, as previously indicated, this Court is not reviewing the OOR's Final Determination. Instead, common pleas' *de novo* review of the OOR's Final Determination is under review by this Court. In turn, we set forth Requester's arguments asserting error by common pleas, rather than the OOR.

[16] Requester could also be citing Pennsylvania Rule of Evidence 901, Pa.R.E. 901. It is unclear based on the citation in Requester's Principal Brief.

Next, with respect to Chief Registrar's Initial and Supplemental Attestations, Requester contends that common pleas improperly weighed the attestations as competent evidence when they were instead "unexamined hearsay." (*Id*. at 6.) Requester, citing Pennsylvania Rules of Evidence 801(c)(2) and 802, Pa.R.E. 801(c)(2), 802, asserts that the attestations were not admissible and not evidence. Requester claims that, because hearsay was admitted, common pleas erred by not permitting Requester to examine Chief Registrar. (*Id*. at 6 (citing Pennsylvania Rule of Evidence 806, Pa.R.E. 806).) Requester asserts that, under *Bowling*, Requester's due process rights were violated. (*Id*. at 6-7.) Requester further claims error because common pleas "failed in [its] duty to determine facts and question the credibility of County's participants and submissions" and that Chief Registrar's "statements were falsely offered as affidavits." (*Id*. at 7.)

Finally, Requester argues that common pleas erred by failing to hold that the OOR appeals officer improperly allowed certain unidentified individuals to participate in the OOR proceedings. Requester, citing Sections 502(a)(1) and 1101(c)(1) of the RTKL, 65 P.S. § 67.502(a)(1), 65 P.S. § 67.1101(c)(1), of the RTKL, claims that only "officials or employee[s] designed to act" may participate in "requests and appeals," and persons with a direct interest, other than the agency, must request to participate. (*Id*. at 8.) Thus, according to Requester, it was error for common pleas to allow anyone besides County or Requester to participate in the OOR proceedings without first filing a request to participate. (*Id*. at 8-9.) Requester concludes that common pleas erred in affirming the OOR's Final Determination and,

10

in turn, requests "an order reversing all determinations and orders below."[17] (*Id.* at 12.)

County argues that common pleas did not commit an error of law and that its opinion is supported by substantial evidence. County first contends that common pleas correctly found that County established its burden showing that the requested records do not exist in the requested format through the attestations submitted by Chief Registrar. (County's Br. at 16.) County asserts that Chief Registrar's Initial and Supplemental Attestations were sufficient evidence for the OOR to conclude that (less the images of the two scanned mail-in ballot envelopes), neither County nor any contractor maintains scanned documents responsive to the Request. (*Id.* at 16-18.) County next argues that it was proper to allow County's Open Records Officer, Solicitor, and Chief Registrar, to participate in the OOR proceedings without the need for a request to participate filed pursuant to Section 1101 of the RTKL. (*Id.* at 19-20.) Specifically, County asserts that "[i]t is a basic function of agencies to operate through representatives" and that "Section 502(a)(1) does not preclude other representatives of an agency from participating in an OOR Appeal." (*Id.* at 19.)

County next contends that common pleas correctly found that the OOR could rely on Chief Registrar's Attestations in rendering the Final Determination. (*Id.* at 20.) County, relying on *West Chester University of Pennsylvania v. Schackner*, 124 A.3d 382, 393 (Pa. Cmwlth. 2015), asserts that an unsworn attestation or sworn affidavit is sufficient to establish the nonexistence of the requested records, and it

---

[17] On September 20, 2024, Requester filed a post-submission communication on the docket pursuant to Pennsylvania Rule of Appellate Procedure 2501(b), Pa.R.A.P. 2501(b), directing the Court to its recent decision in *Previte v. Erie County Board of Elections*, 320 A.3d 908 (Pa. Cmwlth. 2024), *pet. for allowance of appeal filed*, (Pa., No. 230 WAL 2024, filed August 29, 2024), and indicating that this decision supports Requester's position on appeal.

was not error for common pleas to uphold OOR's Final Determination wherein the OOR relied on Chief Registrar's Attestations. County further asserts that Requester's arguments regarding Chief Registrar's unrelated attestation, from a prior OOR appeal, is meritless because "[t]he OOR has consistently held that [a] CVR is the 'digital equivalent' of the contents of the ballot box and is therefore not a public record pursuant to the Election Code," and the records request in the prior OOR appeal requested different records. (*Id*. at 22-23.) County concludes that common pleas' opinion was not in error and, therefore, requests that this Court affirm.

## III.  DISCUSSION[18]

### A. Existence of Requested Records

Initially, we note that "[t]he objective of the RTKL . . . is to empower citizens by affording them access to information concerning the activities of their government . . . , [and the RTKL is designed to] promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions." *Pa. State Educ. Ass'n v. Dep't of Cmty. & Econ. Dev.*, 148 A.3d 142, 155 (Pa. 2016) (internal quotations marks and citations omitted). Pursuant to this statutory objective, "[a]

---

[18] "When the court of common pleas is the 'Chapter 13' or reviewing court, our appellate review is limited to whether the trial court has committed an error of law and whether the findings of fact are supported by substantial evidence." *Bagwell*, 155 A.3d at 1123 n.3 (citing *Township of Worcester v. Off. of Open Recs.*, 129 A.3d 44, 49 n.2 (Pa. Cmwlth. 2016)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hahn v. Wilmington Township* (Pa. Cmwlth., No. 593 C.D. 2021, filed Jan. 3, 2023), slip op. at 10 (quoting *Dep't of Env't Res. v. Borough of Carlisle*, 330 A.2d 293, 298 (Pa. Cmwlth. 1974)). Where common pleas has made factual findings and concluded that a record is exempt under the RTKL, "[t]his Court . . . cannot upset the trial court's credibility determinations or reweigh the evidence to reach a finding contrary to the trial court . . . . Rather, this Court must determine whether substantial evidence supports the trial court's decision." *Kyziridis v. Off. of Northampton Cnty. Dist. Att'y*, 308 A.3d 908, 914-15 (Pa. Cmwlth. 2024) (citation omitted).

record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record." *Pa. Pub. Util. Comm'n v. Friedman*, 293 A.3d 803, 814-15 (Pa. Cmwlth. 2023) (internal quotation marks omitted) (citing Section 305(a) of the RTKL, 65 P.S. § 67.305(a)). Additionally, "[c]onsistent with the RTKL's goal of promoting government transparency and its remedial nature, the exceptions to disclosure of public records must be narrowly construed." *Off. of the Governor v. Davis*, 122 A.3d 1185, 1191 (Pa. Cmwlth. 2015) (en banc).

"Upon receipt of [a] RTKL request, [an] agency must then 'make a good faith effort to determine whether it has 'possession, custody[,] or control of the identified record.'" *Smith Butz, LLC v. Pa. Dep't of Env't Prot.*, 142 A.3d 941, 945 (Pa. Cmwlth. 2016) (quoting *Dep't of Corr. v. Disability Rights Network of Pa.*, 35 A.3d 830, 832 (Pa. Cmwlth. 2012)). However, the RTKL is not without bounds, and "an agency is not required to create a record if the requested record does not exist. Nor is [an agency] required to compile the record in a new or novel format." *Hodges*, 29 A.3d at 1192 (citing 65 P.S. § 67.705).

When an agency determines that it does not possess the requested records, "[u]nder the RTKL, an agency bears the burden of demonstrating that it has reasonably searched its records to establish that a record does not exist." *Dep't of Lab. & Indus. v. Earley*, 126 A.3d 355, 357 (Pa. Cmwlth. 2015). "[A]n agency may satisfy its burden of proof that it does not possess a requested record with either an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record." *Hodges*, 29 A.3d at 1192 (citation omitted). "Under the RTKL, unsworn attestations made subject to the penalties of perjury are considered competent evidence to sustain an agency's burden of proof." *Pennsylvanians for Union Reform v. Pa. Dep't of State*, 138 A.3d 727, 733 n.13 (Pa.

13

Cmwlth. 2016) (citation omitted). "In the absence of any competent evidence that the agency acted in bad faith or that the agency records exist, 'the averments in [an agency's] affidavits should be accepted as true.'" *Smith Butz, LLC*, 142 A.3d at 945 (quoting *McGowan v. Pa. Dep't of Env't Prot.*, 103 A.3d 374, 382-83 (Pa. Cmwlth. 2014)).[19]

In the oft-cited case, *Hodges*, 29 A.3d 1190, the petitioner sought review by this Court of an OOR final determination affirming the Pennsylvania Department of Health's denial of a RTKL request based on the nonexistence of the requested records. On appeal, the petitioner contended that the affidavit relied on by the OOR in issuing the final determination contained contradictory statements, suggesting that the requested records may exist. *Id*. at 1192. Thus, according to the petitioner in that case, the respondent state agency did not meet its burden establishing the nonexistence of the requested records and the OOR's final determination was error. *Id*.

On review, we reasoned that while records in the possession of an agency must be disclosed, pursuant to Section 705 of the RTKL, an agency is not required to create a record where one does not exist or compile records into a new format in response to a request. *Id.* We further reasoned, based on our decision in *Moore v.*

---

[19] In *Office of Governor v. Scolforo*, we observed:

> Affidavits are the means through which a governmental agency details the search it conducted for the documents requested and justifies nondisclosure of the requested documents under each exemption upon which it relied upon. The affidavits must be detailed, nonconclusory, and submitted in good faith . . . . Absent evidence of bad faith, the veracity of an agency's submissions explaining reasons for nondisclosure should not be questioned.

65 A.3d 1095, 1103 (Pa. Cmwlth. 2013) (en banc) (quoting *Manchester v. Drug Enf't Admin., U.S. Dep't of Just.*, 823 F. Supp. 1259, 1265 (E.D. Pa. 1993)).

14

*Office of Open Records*, 992 A.2d 907, 908-09 (Pa. Cmwlth. 2010), that "an unsworn attestation by the person who searched for the record or a sworn affidavit of nonexistence of the record" is sufficient to establish an agency's burden of proof as to nonexistence of a requested record. *Id.* In affirming the OOR, we found that a so-called disclaimer in the subject affidavit, stating that the requested records may possibly exist under another classification than the classifications contained in the request, did not "contradict [the] primary attestation" regarding nonexistence. *Id.* at 1193. Therefore, we concluded that the affidavit in question was not contradictory and that the state agency "was not required to sift through all of its records in order to determine if something under a different spelling or classification might possibly relate to" the requested records. *Id.*

Additionally, in *Gray v. Philadelphia District Attorney's Office*, 311 A.3d 1230, 1233 (Pa. Cmwlth. 2024), a requester submitted a records request seeking, in relevant part, a compilation of individuals that received a copy or transcript of a purported "racially discriminatory jury selection training tape." The agency denied the records request, indicating that it could not locate any responsive records. In turn, the requester filed an administrative appeal with the OOR. *Id.* During the administrative appeal, the agency submitted a statement from its RTKL compliance officer, indicating that none of the operative supervisors were aware of any responsive records, the agency had no practical means of searching for responsive records based on limitations in its case management system, and "an adequate search would entail looking manually through 'thousands of boxes of materials' in an off-site storage facility, 'in the hopes of finding a few responsive documents.'" *Id.* at 1234. The OOR granted the requester's appeal, determining that the agency had not

15

met its burden showing nonexistence of the requested records because it did not conduct a search of the off-site files. *Id.*

The agency appealed to the trial court, reasserting the same arguments presented during the administrative appeal to the OOR. *Id.* at 1235. The trial court affirmed the OOR, finding that the agency failed to meet its burden proving that the responsive records did not exist, reasoning that "not being aware of any responsive documents versus no responsive documents existing are two different scenarios." *Id.* On appeal to this Court, we reversed the trial court, holding "that we see no reasonable basis to suppose that a complete record of all individuals and agencies to have received a copy of the [t]ape from the [agency] is currently in the [agency's] possession, or that one was ever created in the first place." *Id.* at 1241. In so holding, we rejected the "sole explanation offered by [the r]equester for [the] belief that such a list exists [based on] the assertion that the release of the [] [t]ape 'would not have been possible unless the [agency] had compiled a 'list of individuals' that it determined should receive the tape.'" *Id.* Thus, we concluded that "[i]n the absence of a reasonably precise identification of an existing record, or anything beyond speculation, [the agency's RTKL compliance officer] could draw a valid conclusion that the requested list was not in the [agency's] possession following [] inquiries." *Id.*

Here, we turn first to whether common pleas properly held that County established the nonexistence of the requested records through the attestations proffered by Chief Registrar.[20] Below, common pleas affirmed the OOR, determining that County met its burden of proof establishing that the requested

---

[20] We consider together the issues of whether County satisfied its burden of establishing the nonexistence of the requested records, and whether Chief Registrar's unsworn attestations are sufficient to establish this burden.

16

records did not exist based on the Attestations submitted by Chief Registrar and made subject to the penalties of perjury. (Common Pleas' Op. at 8, 10, R.R. at 149a, 151a.) Specifically, common pleas rejected Requester's argument that Chief Registrar's unrelated attestation, submitted in a prior OOR appeal, proved that the requested records exist, and County was acting in bad faith by denying the Request. (*Id.* at 10, R.R. at 151a.) Common pleas further rejected Requester's other argument that the OOR is bound by the Pennsylvania Rules of Evidence "as they relate to the admissibility of written statements."[21] (*Id.* at 11, R.R. at 152a.) Instead, relying on our decision in *Schackner*, 124 A.3d 382, common pleas found that County "may meet its burden through 'an unsworn attestation,'" and Chief Registrar's attestations "were detailed, nonconclusory, and specified that [Chief Registrar] has direct knowledge . . . [as] 'the individual . . . responsible for searching for documents . . . .'" (*Id.*) Common pleas, thus, concluded that the OOR did not err in admitting Chief Registrar's Initial and Supplemental Attestations and crediting same.[22] We agree.

---

[21] Common pleas indicated that it "found no law, and [Requester] has provided none, which binds the OOR by the Rules of Evidence." (Common Pleas' Op. at 11, R.R. at 152a.) We agree. Pursuant to Section 505 of the Administrative Agency Law, 2 Pa.C.S. § 505, "Commonwealth agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted." Likewise, "[t]his requirement is echoed in the Local Agency Law, which provides that '[l]ocal agencies shall not be bound by technical rules of evidence at agency hearings, and all relevant evidence of reasonably probative value may be received. Reasonable examination and cross-examination shall be permitted.'" *Hite v. City of McKeesport*, 312 A.3d 420, 426 n.11 (Pa. Cmwlth. 2024) (citing Section 554 of the Local Agency Law, 2 Pa.C.S. § 554).

[22] "It is beyond peradventure that the trial court, sitting as the fact-finder, is free to believe all, part or none of the evidence, to make all credibility determinations, and to resolve all conflicts in the evidence." *Laurel Road Homeowners Ass'n, Inc. v. Freas*, 191 A.3d 938, 952 (Pa. Cmwlth. 2018) (citation omitted). "This Court, accordingly, cannot upset the trial court's credibility determinations or reweigh the evidence to reach a finding contrary to the trial court." *Id.* (citation omitted).

Here, the facts of this case are similar to *Hodges* and *Gray*. In this case, County submitted the Initial and Supplemental Attestations of Chief Registrar, indicating that beyond the two scanned mail-in ballot envelope images, there are no other scanned or digital images responsive to the Request. (Initial Attestation, R.R. 12a-14a, Supplemental Attestation, R.R. at 96a-99a.) These attestations explain, in detail, the efforts employed to locate, and the search conducted, for the requested records. (Supplemental Attestation, R.R. at 97a-98a.) The attestations also aver that County "has never used digital means for record retention of mail-in ballots or any type of ballot or election document" and that County "only maintains the requested records in paper format." (*Id.*) The attestations further indicate that the use of a digital image scanning capability would require County to establish a new procedure and to "create a secure digital storage system with security policies and procedures." (*Id.* at 98a, ¶ 14.)

In contrast, beyond conclusory allegations, Requester has not proffered any competent evidence establishing that the requested records exist or facts establishing that County is acting in bad faith. (Requester's Br. at 5-8.) Similar to *Gray*, 311 A.3d at 1241, we reject Requester's conclusory assertion that Chief Registrar's unrelated attestation, in the prior OOR appeal, stating that "digital images of ballots are contained in the CVR," somehow establishes that the requested records exist. Requester has not provided a "reasonably precise identification of an existing record, or anything beyond speculation," and, thus, Chief Registrar could validly conclude that the requested records were not in County's possession following a search. *See Gray*, 311 A.3d at 1241.

Moreover, to the extent Requester claims that digital images of CVRs are responsive to the Request, Requester has not provided case law or competent

18

evidence to support the argument that digital images of CVRs are disclosable under either the RTKL or the Election Code, or that digital copies of mail-in ballots are stored/available in a CVR in the first place.[23] To the contrary, even if Chief Registrar's unrelated attestation was relevant and credited by common pleas, pursuant to our recent decision in *Stroehmann*, slip op. at 12, digital images of CVRs are not subject to disclosure under either statutory scheme. Nonetheless, similar to *Hodges*, 29 A.3d at 1193, the averments in Chief Registrar's unrelated attestation, in the prior OOR appeal, do not contradict the primary attestations, proffered here in Chief Registrar's Initial and Supplemental Attestations, averring the nonexistence

---

[23] On November 27, 2022, Requester submitted emails to the OOR regarding statements made by Chief Registrar in an unrelated attestation in connection with a prior OOR appeal, where Requester also sought documents from the May 2022 Primary Election. (R.R. at 58a-77a.) Through these emails, Requester alleged that County had admitted that it maintains scanned images of the records requested in the instant matter because County had previously claimed that the CVRs contain ballot images. (R.R. at 58a.) The unrelated attestation indicated that Chief Registrar "diligently and thoroughly searched the records held within the Lancaster County Voter Registration Office regarding the requested documents and found that the only responsive record would be a . . . []CVR[] file that is produced by the tabulator/scanner in every precinct and then combined in the central tabulator." (*Id.* at 67a, ¶ 6.) Chief Registrar further indicated that "[d]igital images of ballots are contained in the CVR and reviewing a CVR would be similar to inspecting the contents of a ballot box." (*Id.* at 68a, ¶ 12.) Chief Registrar's assertions in the unrelated attestation are in line with this Court's recent binding precedent and persuasive authority concerning what constitutes the contents of a ballot box under the Election Code. *See Honey v. Lycoming Cnty. Off. of Voter Servs.*, 312 A.3d 942, 954 (Pa. Cmwlth. 2024) (en banc), *pet. for allowance of appeal granted*, (Pa., No. 163 MAL 2024, filed Oct. 7, 2024) ("CVRs thus qualify as 'contents' under the Election Code, regardless of whether the container holding the CVRs is deemed to be a voting machine or a ballot box."); *Stroehmann v. Lycoming Cnty. Off. of Voter Servs.* (Pa. Cmwlth., No. 555 C.D. 2023, filed July 12, 2024), slip op. at 12 ("Section 308 consequently shields ballots that are cast in person (and digital images thereof) against RTKL requests, regardless of whether those ballots are still held in a ballot box or were only kept therein at some point in the past. . . ."). "An opinion of the court en banc is binding on any subsequent panel of the appellate court in which the decision was rendered." Pennsylvania Rule of Appellate Procedure 3103(b), Pa.R.A.P. 3103(b). Importantly, even where "[t]he Supreme Court granted an [allowance of] appeal . . . that en banc opinion remains binding precedent in this Court." *Clingan v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 231 C.D. 2021, filed Aug. 29, 2023), slip op. at 6 (citation omitted).

19

of the requested records.  "An agency is only required, however, to search for and provide *the records which are requested*," *Hodges*, 29 A.3d at 1193 (emphasis in original), and according to Chief Registrar's credited attestations, which were not contradicted by competent evidence showing the existence of the records or bad faith, County does not possess the requested records.

Thus, in accordance with our decision in *Smith Butz, LLC*, 142 A.3d at 945, absent competent evidence that County acted in bad faith or that the requested records exist, common pleas was correct to accept the averments in Chief Registrar's attestations as true.  Accordingly, common pleas properly credited Chief Registrar's attestations as to the nonexistence of the requested records, and, therefore, we discern no error in common pleas' Order affirming the OOR's Final Determination.

### B. Applicability of Request to Participate

We turn next to whether County's representatives or officials were required to enter an appearance or request to participate during the proceedings before the OOR.  Pursuant to Section 1101(c) of the RTKL,

> (1) **A person other than the agency or requester** with a direct interest in the record subject to an appeal under this section may, within 15 days following receipt of actual knowledge of the appeal but no later than the date the appeals officer issues an order, file a written request to provide information or to appear before the appeals officer or to file information in support of the requester's or agency's position.
>
> (2) The appeals officer may grant a request under paragraph (1) if:
>
> > (i) no hearing has been held;
> >
> > (ii) the appeals officer has not yet issued its order; and
> >
> > (iii) the appeals officer believes the information will be probative.
>
> (3) **Copies of the written request shall be sent to the agency and the requester**.

20

65 P.S. § 67.1101(c) (emphasis added.) While the RTKL envisions the participation of third parties under Section 1101(c)(1), this provision, by its own terms, is inapplicable to an agency or its representatives. We must, therefore, determine whether County's Open Records Officer, Solicitor, and Chief Registrar are agency officials or representatives not subject to Section 1101(c).

Under Section 502(a) of the RTKL, 65 P.S. § 67.502(a), "[a]n agency shall designate an official or employee to act as the open-records officer." In turn, an agency's "open-records officer shall receive requests submitted to the agency under this act, direct requests to other appropriate persons within the agency or to appropriate persons in another agency, track the agency's progress in responding to requests and issue interim and final responses under [the RTKL]." Section 502(b)(1) of the RTKL, 65 P.S. § 67.502(b)(1). Additionally, pursuant to Section 303(b) of the Election Code, 25 P.S. § 2643(b), "[e]ach county board may appoint a chief clerk . . . and such other employes and assistants as, from time to time, the board may deem necessary to carry out the provisions of [the Election Code]." Thus, in accordance with the RTKL and the Election Code, both County's Open Records Officer and Chief Registrar, are statutorily appointed agency officials and, therefore, were not required to file a request to participate with the OOR.

While neither the RTKL or Election Code prove illustrative on whether a county solicitor is an agency official or representative for the purposes of Section 1101(c) of the RTKL, we find guidance in the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. §§ 1101-1113, and accompanying case law indicating that a county solicitor is a public employee. Under Section 1102 of the Ethics Act, 65 Pa.C.S. § 1102, the term "solicitor" is defined as "[a] person elected or appointed to the office of solicitor for [a] political subdivision." In *Ballou v. State Ethics*

21

*Commission*, 424 A.2d 983, 985 (Pa. Cmwlth. 1981), we held that "[a] township solicitor is a public officer 'elected [or appointed] to perform duties of a grave and important character for the benefit of the public . . . .'" (citation omitted); *see also P.J.S. v. Pa. State Ethics Comm'n*, 723 A.2d 174, 176-78 (Pa. 1999) (holding that a city solicitor was a public employee under the former State Ethics Act). Thus, we are persuaded by the authoritative guidance found in the Ethics Act and *Ballou*, and because Solicitor is a public employee of County, tasked with assisting County in legal matters such as RTKL appeals, Solicitor was not required to file a request to participate during the OOR proceedings.

## IV.   CONCLUSION

For the foregoing reasons, common pleas' disposition is supported by substantial evidence, and we discern no error in common pleas' Order affirming the OOR's Final Determination. Based on our precedent in *Hodges* and *Smith Butz, LLC*, absent any evidence establishing that the requested records exist or that County acted in bad faith, the attestations proffered by County must be accepted as true. Likewise, because County's Open Records Officer, Solicitor, and Chief Registrar are agency officials and representatives, they were not required to submit a request to participate under Section 1101(c) of the RTKL, and it was not error to allow their participation without same. Accordingly, we affirm.[24]

_____

**RENÉE COHN JUBELIRER,** President Judge

---

[24] Given our disposition, we need not address Requester's remaining claims.

22

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Miller,                          :
              Appellant          :
                                :
           v.          :   No. 596 C.D. 2023
                                :
County of Lancaster                      :

# O R D E R

**NOW**, April 11, 2025, the Order of the Court of Common Pleas of Lancaster County, entered in the above-captioned matter, is **AFFIRMED**.

_____
**RENÉE COHN JUBELIRER,** President Judge